**TEXAS CENT. R. CO. v. PERRY.†**

(Court of Civil Appeals of Texas. Ft. Worth. March 16, 1912. Rehearing Denied April 20, 1912.)

**1. CARRIERS (§§ 347, 320*)—INJURY TO PASSENGER—SUFFICIENCY OF EVIDENCE.**

In an action for damages from sickness caused by a railroad company's failure to properly warm its waiting room for passengers, the questions of defendant's negligence and plaintiff's contributory negligence *held* for the jury on the evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346–1397, 1402, 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. §§ 347, 320.*]

**2. DAMAGES (§ 130*)—EXCESSIVE RECOVERY—SICKNESS.**

One thousand dollars was not an excessive recovery for the exposure of a woman 80 years old in a cold railroad waiting room, causing her to be sick at first a week, and later two months, during which time she was under the care of a doctor, and suffered severe pains, · whereby she has since been incapacitated for doing light housework, or work of any nature.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370, 371; Dec. Dig. § 130.*]

**3. CARRIERS (§ 337*)—INJURY TO PASSENGER—COLD WAITING ROOM—NEGLIGENCE.**

A passenger made sick by remaining in a cold waiting room was not chargeable with contributory negligence for failure to call the station agent's attention to his breach of the duty imposed by Rev. St. 1895, art. 4521, to keep the waiting room warm for at least one hour after the arrival of any train, and of the common-law obligation to keep the room warm for a reasonable length of time thereafter if her circumstances reasonably so required, especially where the agent was at the station while she remained there.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1387; Dec. Dig. § 337.*]

**4. CARRIERS (§ 337*)—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.**

In an action for injuries from exposure in a cold railroad waiting room, where there was evidence that some of the injuries were sustained before the plaintiff could be chargeable with negligence in failing to go to a hotel, it was proper to refuse an instruction that she could not recover if she was negligent in failing to go to a hotel, and such negligence contributed to her injuries.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1387; Dec. Dig. 337.*]

**5. TRIAL (§ 260*)—INSTRUCTION—REQUESTS.**

In an action for injuries from exposure in a cold railroad waiting room, a requested instruction that the plaintiff could not recover if upon her arrival at the station she knew or should have known that the waiting room was not properly warmed, and remained there longer than was reasonably necessary, was sufficiently covered by an instruction that the plaintiff could not recover if she remained in the room longer than it would be reasonably necessary for her to depart, considering all the facts and circumstances shown by the evidence; the instruction given being more favorable to defendant than the one refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**6. CARRIERS (§ 337*)—INJURY TO PASSENGER—COLD WAITING ROOM—CONTRIBUTORY NEGLIGENCE.**

A passenger made sick by remaining in a cold railroad waiting room was not chargeable with contributory negligence for remaining so long as was reasonably necessary.

[Ed. Note.—For other cases, see Carriers. Cent. Dig. § 1387; Dec. Dig. § 337.*]

**7. CARRIERS (§ 348*)—INJURY TO PASSENGER—INSTRUCTION.**

In an action for injuries from exposure in a cold railroad waiting room, an instruction that the plaintiff could not recover if she was guilty of negligence proximately contributing to her injuries in remaining there for several hours was properly refused, since it precluded a recovery for injuries sustained while she remained there before a reasonable time for her departure had expired.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403–1407; Dec. Dig. § 348.*]

**8. TRIAL (§ 295*)—INSTRUCTION—BURDEN OF PROOF—CONSTRUCTION OF CHARGE AS A WHOLE.**

In an action for injuries from exposure in a cold railroad waiting room, the giving of an instruction that the burden was on defendant to establish plaintiff's contributory negligence was not reversible error, where from the instructions, taken as a whole, the jury must have understood that all the evidence supporting such plea should be considered, though furnished in part by the plaintiff's own witnesses.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 295.*]

**9. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.**

Where the court instructed that it was defendant's duty to exercise a high degree of care to keep the waiting room warm for at least one hour after the arrival of a train, and as long thereafter as plaintiff's circumstances made it reasonably necessary, it was proper to refuse an instruction that, while it was the defendant's duty to keep its waiting room warm for one hour after the departure of the train upon which plaintiff arrived, yet this duty was one due only to passengers, and that plaintiff was a passenger only until such time as she could reasonably depart in the usual and ordinary manner by the usual and provided way; the duty imposed on the defendant by the instruction given being no higher than that imposed by the requested instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 260.*]

**10. TRIAL (§ 194*)—INSTRUCTION—WEIGHT OF EVIDENCE.**

In an action to recover for injuries from exposure in a cold waiting room, an instruction was not upon the weight of the evidence which summarized the plaintiff's evidence and told the jury that if they believed the same, and that the plaintiff, being a passenger on defendant's train, arrived at the station, and that the circumstances of her injury were as she claimed, then their verdict should be for plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

**11. TRIAL (§ 260*)—INSTRUCTIONS.**

A requested instruction which proposed the submission of facts which were merely the converse of those submitted in another instruction was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**12. CARRIERS (§ 345*)—INJURY TO PASSENGERS—ADMISSIBILITY OF EVIDENCE.**

In an action against a railroad company for injuries from exposure in a cold waiting room, the testimony of defendant's station agent that he would have conducted plaintiff to a hotel, and would have built a fire in the waiting room if she had requested him to do so, was immaterial upon the issue of defendant's liability for failure to perform its duty to provide a warm waiting room, and was properly excluded; no request being necessary to make the defendant liable for failure to perform its duty.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1400; Dec. Dig. § 345.*]

**13. CARRIERS (§ 337*)—INJURY TO PASSENGERS—COLD WAITING ROOM—CONTRIBUTORY NEGLIGENCE.**

Where a railroad company was required to keep its waiting room warm, it could not escape liability to a passenger for injuries from exposure in a cold waiting room by showing that the whole or a part of the waiting room was so cold that it was contributory negligence for her to remain there.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1387; Dec. Dig. § 337.*]

Appeal from District Court, Bosque County; O. L. Lockett, Judge.

Action by Mrs. L. M. Perry against the Texas Central Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Cureton & Cureton, of Meridian, and J. A. Kibler and W. E. Spell, both of Waco, for appellant. Powell Word, of Meridian, and Odell & Johnson, of Cleburne, for appellee.

DUNKLIN, J. The Texas Central Railroad Company, defendant, has appealed from a judgment in favor of Mrs. L. M. Perry, plaintiff, for $1,000 as damages sustained by plaintiff by reason of physical suffering sustained by her, resulting from defendant's negligence in failing to properly warm its waiting room for passengers in the town of Walnut Springs. Plaintiff arrived at that station at about the hour of 4 o'clock on the morning of March 27, 1910, and remained there until about 7 o'clock of the same morning, when she was met by Walter May, who married her granddaughter. Interpreted in the light of the court's charge, the verdict shows a finding by the jury that during plaintiff's stay at the station defendant negligently failed to keep its waiting room warm, and as a result of such failure plaintiff was made sick and for such sickness damages were allowed in the sum above stated.

[1] According to plaintiff's testimony, she arrived at Walnut Springs about 4 o'clock in the morning, and the night was then dark. Under the direction of the conductor, she went into defendant's station, took her seat in the west end of the waiting room, where she remained approximately one-half hour before she saw any one. There was a cold south wind blowing, and

the room was cold, with no fire to warm it. There was a lighted lamp hanging on the wall of the waiting room, but the light was insufficient and the room dark. She was then more than 80 years old, and, according to previous appointment, expected her grandson, Will Gocher, to meet her and take her to his home in the country, a distance of about seven miles from Walnut Springs. During her stay she made no complaint to any one of being cold, made no request for a fire, and made no request to be carried to a hotel. This was her first trip to Walnut Springs, but she knew that there were boarding houses and hotels in the town, but no evidence was introduced to show she knew the location of any of them. After remaining in the station about one-half hour, she saw one of defendant's employés, and requested him to telephone to Walter May, and also to another acquaintance, both of whom resided in Walnut Springs. Later the person so requested reported to her that he was unable to reach either of the persons by the telephone. While waiting in the station and after sun-up and immediately before she left the station, an "old gentleman come to the door to see if there was any place I wanted to go and to take me." She did not desire to go to a hotel because she was afraid she would miss her grandson, Will Gocher, whom she expected to meet. While she was in the station she sat in the west end of the waiting room upon a seat there located near an open door, and within 15 minutes after reaching the room she realized that she would likely be made sick by reason of the fact that the room was cold. Walter May finally came for her, and she went with him to his home in Walnut Springs, and in the afternoon of the same day went to the home of her grandson, Will Gocher, in the country. By reason of her stay in the station without a fire she took cold, and as a result of such exposure was sick for a long time thereafter.

According to testimony offered by the defendant, which was uncontroverted, there were hotels and boarding houses in Walnut Springs, one of which was just across the street, a distance of not more than 100 feet from the waiting room, another situated about the middle of the first block from the depot, and another about 3 blocks from the depot. R. C. Rather, defendant's station agent at Walnut Springs, testified that a stove was located in the east end of the waiting room, and according to a plat of the waiting room, which he verified as being correct, the ticket office projects into the waiting room, but there is plenty of space to pass from the west end of the room to the east end where this witness testified the stove was located.

A. F. Shrader testified that he was de-

fendant's night clerk and station agent at Walnut Springs, and was so employed on the night of plaintiff's arrival at that station. He further testified as follows: "There was a stove in the waiting room on that night. It was in the east end of the waiting room. There was a fire in the stove on that occasion. I built the fire in the stove myself. I built one about 11 o'clock and again about 3 o'clock that night. The condition of the waiting room was warm and comfortable at the time I saw Mrs. Perry in the waiting room. When I built the fire that morning at 3 o'clock, I put the stove full of coal enough to last a couple of hours. Yes, sir; the waiting room was also lighted at the time I saw Mrs. Perry there in the waiting room. There was a lamp hanging on the wall about the center of the waiting room, just a common oil lamp with a round wick. * * * At the time I saw the light there in the waiting room it was lighted plain enough for me to see from one end of the waiting room to the other all right." This witness further testified to the request made of him by the plaintiff to telephone Walter May and of his unsuccessful attempts to get May over the phone; that the plaintiff made no complaint that the room was uncomfortable, no request to be taken to a hotel or boarding house; that he, the witness, was perfectly comfortable while working in his shirt sleeves, and that the weather was not very cold; that he worked at the station on the night in controversy until between 6:30 and 7:00 o'clock a. m.; that the open door near the west end of the waiting room where plaintiff was sitting could have been closed.

Joe Bandy, defendant's call boy, working at the depot, also testified that he was on duty on the night in question; saw Mrs. Perry there; that there was a stove in the east end of the waiting room. Witness saw Shrader build a fire in it. The waiting room was warm and comfortable. Later saw Walter May and told him that there was a lady in the depot who desired to see him.

Defendant also introduced in evidence the depositions of D. S. Landis, in charge of the United States weather bureau station at Ft. Worth, and E. H. Hall, holding a similar position at Waco. According to records kept by these two officials, the minimum temperature in Ft. Worth on March 27th was 59 degrees and the maximum 81 degrees, and at Waco the minimum was 56 degrees and the maximum 84 degrees. The witness Landis testified that under the conditions existing on that date the temperature at Walnut Springs might vary one or two degrees, and the witness Hall stated that with a south wind which was blowing on the day in question the temperature would probably be higher at Walnut Springs than at Waco.

In view of the foregoing testimony, we overrule appellant's contentions that the evidence shows conclusively as a matter of law that defendant was not guilty of the negligence charged in plaintiff's petition, and that plaintiff was guilty of contributory negligence which would preclude a recovery in failing to avail herself of the fire which, according to defendant's testimony, was in the waiting room, and in remaining in the west end of the waiting room where there was no fire without complaining to defendant's employés that the room was cold and without seeking a hotel. We have duly considered the decisions in the cases of T. & P. Ry. Co. v. Cole, 66 Tex. 562, 1 S. W. 629, and I. & G. N. Ry. Co. v. Pevey, 30 Tex. Civ. App. 460, 70 S. W. 778, cited by appellant in support of the foregoing contentions, but do not think they are applicable to the facts of this case.

[2] Plaintiff testified that from the exposure to cold in the waiting room she was sick at first about a week, and later about two months at one time; that she suffered pains in her bones, chest, and lungs; that a doctor waited on her something like two months at one time; that, before that illness, she was able to cook and do light housework, but since said exposure she has been unable to do anything. In view of this testimony, we overrule the appellant's contention that the evidence is insufficient to sustain the verdict in the sum awarded.

The court gave the following special instruction requested by appellant: "The court instructs you that although you may believe from the evidence that the west end or portion of the defendant's depot at Walnut Springs on the occasion in question was not sufficiently warmed or lighted to be comfortable to the plaintiff located in such portion of said depot (if you find that such portion was not sufficiently warmed and lighted), yet, if you further believe that the defendant had provided a fire in the east end or portion of said depot on the occasion in question, whereby that portion thereof was sufficiently warmed and lighted, and that, had the plaintiff gone into said east end of said depot, she would not have sustained the injuries, if any, of which she complains, and you further believe that the plaintiff by failing to leave said west end of the depot and go into the east end thereof failed to exercise ordinary care which proximately caused or contributed to the injury of which she complains, then you are instructed that she cannot recover in this case, and you will return a verdict for the defendant." And also in the main charge the court instructed the jury to return a verdict in favor of the defendant if they should "believe from the evidence that the defendant was negligent and that the plaintiff was injured, and made sick thereby, but that she, while remaining at said depot, failed to exercise ordinary care to prevent said injury, if any, under all the facts and circumstances shown by the

evidence, and that such failure, if any, contributed proximately to her injury."

[3] Appellant's requested instruction No. 2 was, in effect, that if plaintiff found the room cold and failed to complain of that condition to those employed at the station and failed to request that the room be warmed, and that in such failure she was guilty of negligence proximately contributing to her injury, then a verdict should be returned in defendant's favor. By article 4521, Revised Statutes, it was made the duty of the defendant to keep the waiting room warm for at least one hour after plaintiff's arrival, and it was defendant's duty under the common law to keep the room warm for a reasonable length of time after the expiration of the period named in the statute if the circumstances surrounding plaintiff reasonably so required, and if a person of ordinary prudence charged with the duty which defendant owed to plaintiff as a passenger would have continued to keep it in that condition. I. & G. N. Ry. Co. v. Doolan, 56 Tex. Civ. App. 503, 120 S. W. 1118; T. & P. Ry. Co. v. Cornelius, 30 S. W. 729. Defendant could not avoid the legal consequences of a breach of this legal duty upon the plea that plaintiff was herself guilty of negligence proximately contributing to her injury in failing to inform the station agent of such breach of duty, and in failing to request him to perform that duty, especially as the evidence shows conclusively that the agent was present at the station during the time plaintiff remained there, and necessarily must have known as well as did the plaintiff that the room was cold.

[4] Complaint is made of the court's refusal to give special charge No. 16 requested by the defendant, which reads: "The court instructs you that although you may believe from the evidence that defendant's depot at Walnut Springs on the occasion in question was not sufficiently lighted and warmed, and although you may further believe that plaintiff became cold and sustained all the injuries complained of in her petition on account thereof, yet if you further believe from the evidence that plaintiff failed to exercise ordinary care to secure comfortable quarters or lodging at some of th hotels or boarding houses at Walnut Springs, and that such failure caused or contributed to her injuries, if any, then, and in such event, you will find for the defendant. The foregoing charge is requested after the giving of the court's main charge." Requested instruction No. 11 was substantially the same as the instruction last quoted. The evidence was sufficient to warrant a finding by the jury that some of plaintiff's injuries were sustained before she could be chargeable with negligence in failing to go to a hotel; yet the effect of those requested instructions was to exclude a recovery for the injuries so sustained if the jury should find that, after the expiration of that portion of her stay, plaintiff was guilty of negligence in the matter mentioned which contributed to further injuries. Hence those instructions were properly refused, even though plaintiff's failure to go to a hotel after the expiration of a reasonable length of time could properly be made a predicate for the defense of contributory negligence as against a claim for damages for such further injuries.

Special instruction No. 14 was substantially the same as the two last discussed, and was properly refused for the same reasons already given, and for the further reason that it contained a statement that defendant was not required by law to keep its station warm for any special period of time after the train's arrival at Walnut Springs, in contravention of article 4521, Revised Statutes, noted above.

[5, 6] Subdivision 5 of the fourth paragraph of the main charge reads: "If you believe from the evidence that the plaintiff remained in defendant's waiting room at Walnut Springs after such length of time as would be reasonably necessary for her to depart therefrom, considering all the facts and circumstances shown by the evidence, and that she suffered injury or sickness caused by her remaining after such length of time, then, in that event, you will not allow her anything for such sickness or injury for such time." Special instruction No. 13, which was, substantially, that if plaintiff upon her arrival at the station knew, or by the exercise of ordinary care could have known, that the waiting room was not properly warmed and knew, or by the exercise of ordinary care could have known, that if she remained there after a reasonable length of time in which to depart in the usual and ordinary manner and by the usual and provided way, that injuries and damage were likely to result to her, then the defendant would not be responsible for such sickness which reasonable care and prudence on her part would have avoided. It will be noted that by subdivision 5 of the fourth paragraph of the general charge, above quoted, a recovery was expressly denied for all injuries which plaintiff sustained after expiration of the period of time which was reasonably necessary for her to depart from the station, "considering all the facts and circumstances shown by the evidence." At all events, plaintiff could not be chargeable with negligence in remaining at the station so long as it was reasonably necessary for her to so remain; and, as the charge peremptorily denied a recovery for injuries occurring after the expiration of that period of time, it was more favorable to appellant than was requested instruction No. 13, which, therefore, was properly refused.

[7] Special instruction No. 12, which was refused, was, in effect, that, if plaintiff was guilty of negligence proximately contributing to her injuries in remaining at the sta-

tion for several hours, then a verdict should be returned in favor of the defendant. This was erroneous, in that it precluded a recovery for injuries sustained while plaintiff remained in the depot before a reasonable time for her departure had expired, as well as injuries sustained by remaining there after that time.

[8] Error is assigned to that part of the court's charge which reads as follows: "You are further instructed that the burden of proof in this case rests upon the plaintiff to establish her cause of action, as alleged in her petition, by a preponderance of the evidence, and, if in this she has failed, then you will find for the defendant, but the burden of proof rests on the defendant to establish by a preponderance of the evidence that the plaintiff was guilty of contributory negligence, if any, and, if it has failed to establish this, then on this issue you will find for the plaintiff." Appellant contends that both the pleading and the evidence of plaintiff showed prima facie a case of contributory negligence, or that at all events the instruction placing the burden upon the defendant to establish contributory negligence by a preponderance of the evidence was misleading to the defendant's prejudice, in that it was calculated to exclude from the minds of the jury testimony of plaintiff herself tending to show contributory negligence on her part; the testimony of plaintiff tending to show such negligence on her part being substantially the same as that set out above. Unquestionably the general rule is that the burden is upon the defendant to sustain by a preponderance of the evidence the defense of contributory negligence. But it is also well settled that, where the evidence supporting such a plea in part is furnished by plaintiff's own witnesses, the charge should be so framed that the jury may understand that such testimony may be considered in determining that issue as well as the testimony furnished by the defendant's witnesses. See T. & P. Ry. Co. v. Reed, 88 Tex. 447, 31 S. W. 1058; G., C. & S. F. Ry. Co. v. Shelton, 96 Tex. 301, 72 S. W. 165. But if it appears from the charge, taken as a whole, that the jury reasonably could not have understood that the testimony coming from plaintiff's witnesses should not be considered in determining the issue of contributory negligence, then a charge in general terms placing the burden upon the defendant to establish such a plea will not constitute reversible error. In this case the court in instructing the jury upon plaintiff's theory of the case, as a predicate for a recovery, required a finding, in effect, that plaintiff was using ordinary care for her personal safety in remaining at the station during the time she did remain. And the charges given upon the issues of contributory negligence as shown in the instructions quoted above required a finding upon those issues from "the evi-

dence," from which the jury must have understood all the evidence bearing upon those particular issues. Under these circumstances, the assignment of error now under discussion is overruled. G., C. & S. F. Ry. Co. v. Howard (Sup.) 75 S. W. 805; M., K. & T. Ry. Co. v. Gist (Cr. App.) 73 S. W. 857.

[9] The second paragraph of the court's charge reads: "You are instructed that the evidence shows that the plaintiff was a passenger on defendant's passenger train arriving at Walnut Springs, Tex., on or about the time alleged, and, as such passenger, she was entitled to the rights and privileges of such to occupy defendant's waiting room in its depot at Walnut Springs, Tex., for such length of time after her arrival there as would be reasonably necessary for her to safely depart therefrom, considering all the facts and circumstances shown by the evidence. It was the duty of the Texas Central Railway Company to use that high degree of care defined in paragraph 'c' of this charge to keep its said waiting room warm for at least one hour after the arrival of its said passenger train at said station when there are passengers arriving thereon, and when the weather was such that the comfort and health of such passengers makes it reasonably necessary that its waiting room should be warm, and not cold, and also for such additional time after the expiration of one hour as would be reasonably necessary for such passenger to safely depart from said depot, taking into consideration all of the facts and circumstances surrounding the passenger at the time and that is shown by the evidence."

[10] The third paragraph of the court's charge reads: "Now, if you believe from the evidence that, the plaintiff being a passenger on defendant's passenger train that arrived in Walnut Springs on or about the 27th day of March, 1910, from the west and in the nighttime, and that she went into the waiting room of the defendant to await the arrival of some one whom she expected to meet her there, and that she remained there only such length of time, she using ordinary care, as was reasonably necessary, considering all the facts and circumstances shown by the evidence, and you believe from the evidence that said waiting room was cold, and not warm, during said time, and that it was necessary for plaintiff's comfort and health that the said waiting room should be warm, and that the defendant did not use that high degree of care as hereinbefore defined in keeping said waiting room warm, if it was a fact that it was not warm, and that such failure, if any, was negligence on the part of the defendant or its employés, and that the plaintiff was thereby injured as she alleges, and that such negligence, if any, was the proximate cause of her injury and sickness, if any has been shown, then, in that event, you will find for the plaintiff."

Appellant has assigned error to these in-

structions upon the ground that the same imposed an unwarranted duty upon the defendant. It is insisted, further, that there was error in the court's refusal to give defendant's requested instruction No. 10, which reads: "The court instructs you that, while the statute provides that it was the duty of the defendant to keep its depot at Walnut Springs heated and warm one hour after the departure of the train upon which plaintiff arrived, yet this duty of the defendant was one due only to passengers; that the plaintiff was a passenger upon her arrival at the defendant's depot at Walnut Springs, but that she remained a passenger only for such a length of time as was reasonably necessary for her to depart from the depot, in the usual and ordinary manner, by the usual and provided way of egress, and you are instructed that upon the expiration of a reasonable time after the arrival of the plaintiff at the defendant's depot at Walnut Springs, for her to depart therefrom in the usual and ordinary manner, by the usual and provided way, that she was no longer a passenger, and the defendant owed her no further duty as such and was not obliged to keep its depot warm and lighted for her, even though an hour had not elapsed after the departure of the defendant's train upon which the plaintiff arrived. And in this connection you are further instructed that if the plaintiff suffered her injuries and damages after the expiration of a reasonable time after her arrival at the defendant's depot for her to have departed therefrom in the usual and ordinary manner, and by the usual and provided way, then you will return a verdict for the defendant. The foregoing charge is requested after the giving of the court's main charge." The general charge imposed no higher duty upon appellant than the duty defined in the requested instruction, and was more favorable to defendant than it could rightfully expect. The latter portion of the requested instruction which was, in effect, a charge that a verdict should be returned in defendant's favor if plaintiff's injuries were sustained as a result of her presence in the waiting room after the expiration of a reasonable length of time for her to depart therefrom was embodied in subdivision 5 of paragraph 4 of the main charge copied above. Nor do we think that the instruction given and last quoted was upon the weight of the evidence, as further suggested by appellant.

[11] Requested instruction No. 19 proposed the submission of facts as a basis for a verdict for defendant the converse of those submitted in the instruction given and last copied, and was properly refused because sufficiently covered by other instructions which were given.

[12] In view of our understanding of the law applicable to the case as expressed above, there was no error, at all events, in excluding the testimony of the witness Shrader offered by appellant, in effect, that he would have conducted plaintiff to a hotel, and would have built a fire in the waiting room if plaintiff had requested him so to do.

Other portions of the court's charge submitting appellant's defense to the suit are criticised as being upon the weight of the evidence, and as placing too great a burden upon the defendant. We have carefully considered these assignments and find them without merit.

[13] The majority are of the opinion the issue of contributory negligence does not arise in this case under the evidence, except in so far as such negligence enters into the determination of whether or not appellee remained in appellant's depot beyond a reasonable time, which was fully covered by the court's charge. G., C. & S. F. Ry. Co. v. Trawick. 80 Tex. 270, 15 S. W. 568, 18 S. W. 948; T. & P. Ry. v. Payne, 99 Tex. 46, 87 S. W. 330, 70 L. R. A. (N. S.) 946, 122 Am. St. Rep. 603. But, if it did, the charges actually given were sufficient.

The writer is not prepared to concur in the first conclusion of the majority just stated. He believes that, at all events, the issue of contributory negligence in plaintiff's failure to go into the east end of the waiting room, if there was a fire in that portion of the room, was raised by the evidence, and that defendant was entitled to a submission of the same as a defense independent of the issue whether or not plaintiff remained in the station an unreasonable length of time. Burnett v. F. W. L. & P. Co., 102 Tex. 31, 112 S. W. 1040, 19 L. R. A. (N. S.) 504. Whether or not a valid defense of contributory negligence in any other respect should also have been submitted as an independent defense is a question, the determination of which is not necessary and upon which the writer expresses no opinion, in view of the fact that all assignments of error have been overruled for other reasons.

The judgment is affirmed.