## GULF, COLORADO & SANTA FE RAILWAY COMPANY v. S. T. TRAWICK.

### No. 6521.

1. **Waiver of Stipulated Limitation for Claim for Damages.**—Suit against a railway company for injury and loss caused by its negligence to cattle shipped by plaintiff upon its road. The freight contract contained a clause requiring suit within forty days from the time damages occurred. The plaintiff in replication to a plea of this limitation, the suit not having been filed within the stipulated time, alleged that "within three days after the accrual of the cause of action, and on divers days down to and including October 27, 1884, the defendant by and through its agents represented to plaintiff that the defendant would adjust and pay his claim for the cattle killed and injured, and induced him to put his claim for much less than the real damage, upon a statement made by defendant through the local agent of defendant at Lampasas to the effect that defendant would pay said claim without suit if plaintiff would put it in for a reasonable sum," * * * alleging refusal to pay October 27 and suit filed November 11, 1884. *Held,* that the replication was sufficient. 63 Texas, 404.

2. **Same.**—See facts held insufficient to sustain the allegation of waiver of time and estoppel.

3. **Shipment of Cattle Upon Railway.**—Liability for safety of cattle shipped upon a railway begins when they are received for shipment into its stockpens prepared by it in aid of the shipment.

4. **Stockpens—Duty of Railway Company.**—Article 4236, Revised Statutes, prescribes that railway companies shall erect at each station * * * "suitable buildings or inclosures to protect produce, wares, and merchandise, and freight of every description." This includes stockpens for protection of cattle tendered for shipment. Such pens so required must be sufficiently safe for the purpose indicated.

5. **Contributory Negligence.**—If a stockpen was unsafe and the owner of cattle placed therein could have known its condition, and loss follows from its defects the railway still is responsible for damages from such loss. The road can not absolve itself from liability by permitting its pens to become so dilapidated as to be recognized as unsafe by the shipper.

### ON REHEARING.

6. **Remittitur—Practice in Supreme Court.**—The limitation of forty days in the shipping contract did not apply to the loss of cattle from the stockpen. The jury having found the item of loss by the escape of cattle from the pen separate from the other loss, and the plaintiff having remitted as to all but the sum found for cattle lost from the pen, the case is reversed and rendered for the plaintiff for such sum and interest.

APPEAL from Lampasas. Tried below before Hon. W. A. Blackburn. The opinion gives a statement.

*Mathews & Wood,* for appellant.—1. The facts alleged in plaintiff's first amended first supplemental petition were not sufficient to estop defendant from defending under the forty days limitation clause in the contract under which the cattle were shipped, because the representations alleged to have been relied on are not alleged to have been made by one having authority to bind defendant to an abandonment of the

limitation clause, or by one having authority to in any manner settle or adjust damage claims, and because it appears from said allegations that there was no false representation or concealment of a material fact, but the alleged representations were mere statements of opinion and did not have reference to anything past or present. Trawick v. Railway, 68 Texas, 314; Edwards v. Dickson, 66 Texas, 616–619; 2 Pome. Eq. Jur., sec. 808; Bige. on Estop., pp. 476, 477, 484, 486, 488; Langdon v. Doud, 10 Allen, 432; Turnipseed v. Hudson, 50 Miss., 439; White v. Ashton, 51 N. Y., 285; Danforth v. Adams, 29 Conn., 107; Gooden v. Ins. Co., 20 N. H., 93.

2. The defendant is not held to the same degree of care in the construction and furnishing of cattle pens as it is required to exercise with regard to its roadbed and cars, and the defendant's liability for the cattle lost at Navasota, if any there was, was that of a warehouseman, and the court should, as requested by defendant, have instructed the jury as to the liability of warehousemen. Rev. Stats., arts. 281, 283; Railway v. Schneider & Davis, 1 Ct. App. C. C., sec. 118; Railway v. Morse, 1 Ct. App. C. C., sec. 412; Railway v. Douglass, 2 Ct. App. C. C., sec. 30.

3. If the pens at Navasota were not safe, and the plaintiff, knowing their unsafe condition, put his cattle in them and failed to provide such suitable means as he could have provided to prevent their escaping, then he was guilty of such contributory negligence as would prevent his recovery for their loss. Penn v. Railway, 49 N. Y., 204; Ross v. Railway, 49 Vt., 364; Railway v. Spear, 44 Mich., 169.

*W. B. Abney,* for appellee.—1. The court did not err in overruling defendant's exceptions to plaintiff's first supplemental petition, it being alleged that the defendant by and through its agents represented to plaintiff that his claim would be adjusted and paid, and that the local agent requested plaintiff not to sue. Edwards v. Dickson, 66 Texas, 617, 618; Dickerson v. Colgrove, 100 U. S., 578; Bige. on Est., 387; May on Ins., sec. 488.

2. The defendant having contracted to receive and ship for plaintiff certain cattle, was bound to furnish plaintiff with all the facilities and appliances necessary to receive, load, and transport the same; failing to do this, defendant would be responsible for violating its contract, not as a warehouseman, but the same as an individual would be under the same circumstances. Railway v. Nicholson, 61 Texas, 495; Railway v. Trawick, 68 Texas, 314; Hutch. on Carriers, sec. 94; Whart. on Neg., secs. 573, 574.

3. Negligence being a question of fact to be determined by the facts of each case, it was not error for the court to refuse the defendant's special charge, that "If therefore you find that such pens were so constructed that prudent persons did and were accustomed to pen

cattle therein for shipment, then the defendant would not be guilty of negligence or want of care in pointing out said pens to plaintiff." Railway v. Evansich, 61 Texas, 6.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by the appellee to recover damages to his cattle caused by their escape from a stock pen at Navasota while in process of shipment to Lampasas, and from injuries received by them while being transported to the last named place. The contract contained a provision limiting a right of action upon it to forty days from the time the damage occurred.

A full statement of the facts and issues was given in the opinion on a former appeal, when the judgment was reversed because of the refusal of the court to charge upon the effect of the failure of the plaintiff to institute his suit within the time limited. 68 Texas, 314. After the cause was remanded to the District Court the plaintiff filed a supplemental petition in reply to the defendant's said plea of limitation, in which he alleged as reasons why said plea should not prevail that "within three days after the accrual of plaintiff's cause of action and on divers days down to and including the 27th day of October, 1884, the defendant by and through its agents represented to plaintiff that the defendant would adjust and pay his claim for the cattle killed and injured, and induced him to put in his claim for much less than his real damage, upon a statement made by defendant through the local agent of defendant at Lampasas to the effect that defendant would pay said claim without suit if plaintiff would put it in for a reasonable sum, and that after the claim was put in the hands of said agent, to-wit, on May 6, 1884, and divers days thereafter, defendant induced him to delay bringing suit against it until long after the expiration of said forty days by stating to plaintiff that his claim was in the hands of the company, and that he (the said agent) was satisfied and believed that defendant would pay it without suit, and at the same time requested plaintiff not to sue upon his claim until defendant had acted on it; that plaintiff, relying upon the representations so made, delayed the institution of his suit; that afterward, on the 27th day of October, 1884, the defendant through its general manager refused to pay the claim; that plaintiff filed his suit on the 11th day of November, 1884, and that he was induced to delay the institution of his suit by the representations aforesaid."

The court overruled an exception taken by the defendant to this pleading, and the appellant contends committed an error in so deciding.

The question of waiver of similar clauses in policies of insurance has been frequently considered by the courts of our own and other States. While there exist some material differences in its application to the two descriptions of contracts, the principle is substantially the same in both cases.

The rule upon the subject stated in the opinion of the Supreme Court of New York in the case of Ripley v. Etna Insurance Company, 29 New York, 557, meets with our approbation. It is there said: "A twelve months statute of limitation, although assented to by the parties, operates as a forfeiture. It is therefore to be strictly construed. Slight evidence of waiver, as in other cases of forfeiture, will be sufficient to defeat its application." Fire Ins. Co. v. Dodge, 44 Mich., 423; Ins. Co. v. Meyer, 93 Ill., 276; Derrick v. Ins. Co., 74 Ill., 408.

In the case of Martin v. State Insurance Company, 44 New Jersey Law Reports, the Supreme Court of New Jersey said: "If the delay to bring suit is a result to which the company mainly contributed by holding out hopes of amicable adjustment, the company can not be permitted to take advantage of the delay under the limitation clause of the policy."

This court said in the case of St. Paul Fire and Marine Insurance Company v. McGregor, 63 Texas, 404, that "If the course of conduct pursued by the appellant was such as to induce the appellee to believe that the sum admitted to be due on the adjustment made would be paid without suit, and for this reason suit was not brought within the time prescribed, then under well settled principles applicable to such cases this action may be maintained after the expiration of the time prescribed."

The only difficulty that we have found in reaching a conclusion upon the sufficiency of the pleading excepted to in this case is as to whether the promises and inducements alleged to have caused the delay are charged to have been made by the corporation or by an agent having its authority to act in the matter. We conclude that the allegations are sufficient in that respect and that there was no error in overruling the exception. But we do not find the pleading sustained by the evidence. All of the evidence is to the effect that the only statements that were made to the plaintiff upon the subject were made to him by the local agent of the defendant mentioned in the pleading, and that he gave them only as his own opinion and stated at the time that he had no authority in the matter. The evidence shows that he in fact had none.

The defendant sought a ruling of the court upon the insufficiency of the evidence to support the issue of estoppel, both by a charge requested and upon its motion for a new trial. The charge should have been given and the motion should have been granted.

The evidence shows that it was after the loading of the cattle of plaintiff on the train for transportation had begun and while that transaction was going on that a part of the cattle broke the pen in which they were confined for the purpose of being loaded, and escaped. Appellant contends that the cattle in the pen were in the custody of the

defendant as a warehouseman and not as a carrier, and that as to them it was not liable as a common carrier, and upon this issue complains of the following charge given by the court:

"If from the evidence you believe plaintiff delivered said cattle in accordance with the alleged contract, and that defendant received them for shipment as charged, then defendant would be responsible for any loss except such as may have been caused by unavoidable casualty, such as the act of God or the public enemy, or such injury as is caused by the uncontrollable vicious propensities of the cattle and their natural or inherent infirmities."

This court in the case of the East Line & Red River Railway Company v. Hall, 64 Texas, 620, construing article 283 of the Revised Statutes as to when the liability of a railway company began as a common carrier in the case of a shipment of cotton bales, treated it as having attached, notwithstanding no bill of lading had been signed, when the plaintiff by direction of the station agent had put the cotton (187 bales) upon the platform, thirty bales of which had been tagged by a servant of the defendant under an order from the station agent to tag the whole lot, and seven of which had been actually loaded upon the car.

The cattle in the case before us had been placed in the pen from which they escaped, by direction of defendant's agent for the purpose of immediate shipment, and as they were there and prepared for that purpose and the work of putting the whole herd on the cars was actually going on and nearly one half of them had already been loaded, we think that under the authority of the decision referred to the whole of the cattle must be considered as having been received by the defendant for shipment and held by it as a common carrier. Railway Company v. Trawick, 68 Texas, 314. Under this state of facts we do not think there was any error in the charge as given.

Appellant assigns as error the refusal of the court to give the following charge:

"If the jury believe from the evidence that the defendant pointed out the pens at Navasota to the plaintiff as suitable for penning cattle, and that the pens were not properly constructed, and that the defendant was guilty of negligence in so pointing out the said pens, yet if the plaintiff examined the pens and saw they were not in good condition, but put his cattle therein and failed to provide suitable means to prevent their escaping from the pens, then the plaintiff would be guilty of what is termed contributory negligence, and he is not entitled to recover anything on account of loss of cattle escaping from said pens."

Article 4236 of the Revised Statutes provides as follows: "Each and every railway company is hereby required to erect at each and every depot, station, or place established by such company for the reception and delivery of freight, suitable buildings or inclosures to pro-

tect produce, goods, wares, and merchandise, and freight of every description from damage by exposure to the weather or otherwise."

We think this statute requires railway companies to keep pens for the shipment of cattle and that they can not absolve themselves from their statutory duty to keep such as are suitable for the business by showing that they were so badly kept or constructed as to make it contributory negligence upon the part of the shipper to use them.

The cattle that were injured in the course of their transportation seem to have been in good condition at the beginning of their journey but injured at its termination.

The evidence fails to disclose by what means the injuries were produced or when or where on the trip they occurred. In the absence of such evidence we think it is correct to treat the carrier as responsible in that respect.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered February 6, 1891.

*W. B. Abney* and *Walter Acker*, for appellee, argued a motion for rehearing.

### On Rehearing.

STAYTON, Chief Justice.—While appellant is liable for damages resulting from the defective pen as a common carrier, it is evident that the shipping contract containing a limitation of time in which an action should be brought or otherwise be barred does not apply to so much of the cause of action as is based on defective stock pens; and while we adhere to the rulings made in the former opinion, instead of reversing the judgment and remanding the cause as before ordered, a remitter of all damages awarded to appellee other than such as resulted from the defective pens having been made, the former judgment will be set aside and judgment will now be entered for appellee for $652.90, with interest thereon from November 10, 1887, at the rate of 8 per cent per annum, this being the damages awarded by the jury on claim not barred, with all costs in the court below, and in favor of appellant for costs of this appeal.

*Reversed and rendered.*

Delivered March 17, 1891.