# MAY, 1912.

### Galveston, Harrisburg & San Antonio Railway Company v. Wood-Hagenbarth Cattle Company.

#### No. 2205.   Decided May 1, 1912.

**1.—Interstate Commerce.**

Where the ultimate destination of a shipment of property from a point in Texas, when made, was beyond the State, and it moved to such destination in a continuous and uninterrupted journey, unaccompanied by any delivery by the carrier to the consignee within the State, it was an interstate shipment and subject to the rates prescribed by the Interstate Commerce Commission, not those of the Texas Railroad Commission.   (P. 182.)

**2.—Same—Contract.**

The fact that separate contracts were made by the shipper with the initial carrier, transporting the shipment wholly within the State, and with a connecting line receiving and transporting it to a point beyond the State, did not make the contract of the first carrier a local as distinguished from an interstate one, where the transportation was originally intended to be, and was, in fact, continuous.   (P. 184.)

**3.—Same—Delivery to Consignee.**

Where the contract of the initial carrier, transporting the shipment wholly within the State and to its terminus, was for delivery there to the shipper who was also consignee, or to its connecting line for transportation beyond the State, the fact that the cars were, by direction of the shipper's agent accompanying them, transferred at such terminus to the connecting line, with which such agent then made a further contract for their transportation to the destination beyond the State, did not constitute a delivery to the consignee at that point nor an interruption of the continuous transportation constituting their movement one of interstate commerce.   (Pp. 182-184.)

**4.—Same—Cases Distinguished.**

Houston D. Nav. Co. v. Insurance Co. of N. A., 89 Texas, 1, followed. Gulf, C. & S. F. Ry. Co. v. State, 97 Texas, 274, and Texas & P. Ry. Co. v. Taylor, 103 Texas, 367, distinguished.   (P. 184.)

**5.—Commerce Between State and Territory.**

Congress has the power to invest the Interstate Commerce Commission with the right to regulate commerce between a State and a Territory.   (P. 185.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from El Paso County.

Wood-Hagenbarth Cattle Co. sued the Railway Co. On plaintiff's appeal from a judgment for defendant, it was reversed and rendered in favor of appellant, and appellee obtained a writ of error.

*Baker, Botts, Parker & Garwood, Beall & Kemp,* and *J. S. McEachin,* for plaintiff in error.   If the intent in starting a shipment from a point within the State of Texas was that the final destination

should be a point without the State, and such purpose was not abandoned, the shipment would be an interstate one, even though there were temporary breaks by transfers from one carrier to another, and the rate authorized by the Interstate Commerce Commission, and not the local or State rate, must be applied.   Houston D. Nav. Co. v. Insurance Co., 89 Texas, 1; State v. G. C. & S. F. Ry. Co., 44 S. W., 542; State v. I. & G. N. Ry. Co., 31 Texas Civ. App., 219; G. C. & S. F. Co. v. Fort Grain Co., 72 S. W., 419; G. C. & S. F. Ry. Co. v. Fort Grain Co., 73 S. W., 845; Cutting v. Florida Ry. & Nav. Co., 46 Fed., 641; Coe v. Errol, 116 U. S., 517; Wabash Ry. Co. v. Illinois, 118 U. S., 557.

While a shipper may consign to a given point within the State, pay the freight, *assume custody* and *take possession* of his property, and later re-ship to another point at the local rate, yet he cannot, by arrangement with the initial carrier to act as forwarding agent, evade the interstate tariff, as was attempted in this case.   Morgan v. M. K. & T. Ry., 12 I. C. C. Rep., 525; Wood Butter Co. v. C. C. C. & St. L. Ry., 16 I. C. C. Rep., 374.

*Bates McFarland* and *S. P. Weisiger,* for defendants in error.— The intentions of the plaintiff when he bought the cattle, as to what was to be done with them, or as to where or how they were to be shipped, could not affect the question of the character of the shipments afterwards made, nor make them local or interstate.   That is determined by the contract, and the facts of the shipments occurring thereunder, and any evidence of plaintiff's intentions as to disposition or shipment of the cattle is immaterial and irrelevant.   T. & N. O. Ry. Co. v. Sabine Tram Co., 121 S. W., 256; G. C. & S. F. Ry. Co. v. State, 204 U. S., 403; Coe v. Errol, 116 U. S., 517; T. & P. Ry. Co. v. Taylor, 126 S. W., 1119; 16 Cyc., 848; Heiserman v. Railway Co., 18 N. W., 903; White v. Railway Co., 86 S. W., 962; Ft. W. & D. C. Ry. Co. v. Whitehead, 6 Texas Civ. App., 595; M. I. R. R. T. & Co. v. Geradun, etc., 1 I. C. C. R., 607; no written contract can be added to, varied or changed by parol testimony.   Horan v. Long, 11 Texas, 233; Faires v. Cockrell, 88 Texas, 431.

The contract sued on must be interpreted by its unambiguous terms as we find them; and its legal status fixed and defined by the actual occurrences attending its performance, within its expressed terms; it cannot be altered, amended, explained or interpreted by the previously entertained intentions and purposes, or the opinion of appellant's agent, Kingsbury, the shipper.   Greenl. Ev. (16th ed.), sec. 275; Horan v. Long 11 Texas, 233; Faires v. Cockrell, 88 Texas, 431; G. C. & S. F. Ry. Co. v. State, 204 U. S., 403; T. & N. O. Ry. Co. v. Sabine Tram Co., 121 S. W., 256; Coe v. Errol, 116 U. S., 517; T. & P. Ry. Co. v. Taylor, 126 S. W., 1119.

The shipments in controversy in this suit were local or intrastate shipments, under contracts fully performed by the delivery of the cattle at El Paso, Texas, to appellant, the consignee, and were subject only to the stock cattle rates on such shipments as fixed by the Texas Railroad Commission.   T. & P. Ry. Co. v. Taylor, 126 S. W., 1119; G. C. & S. F. Ry. v. State of Texas, 204 U. S., 403; T. & N. O. Ry. v.

Sabine Tram Co., 121 S. W., 256; Ft. W., etc., Ry. v. Whitehead, 6 Texas Civ. App., 595; Cin, etc., Ry. v. I. C. C., 162 U. S., 184; Gen. Oil Co. v. Crain, 209 U. S., 212.

The Federal Government having received its powers from the several states, as delegated to it by the Constitution, and there being no such power delegated by subdivision 3, section 8 of article 1 of the Constitution authorizing Congress to regulate commerce between any State and any Territory, Congress was without authority to regulate commerce between a State and a Territory. Const. U. S., sub-div. 3, sec. 8, art. 1; Const. U. S., art. 10, amendment. It is settled principle of construction, applicable to the Federal Constitution, that powers are not to be assumed as possessed by the Federal Government, other than those granted in the Constitution. 8 Cyc., 773, note 5; State v. Davis, 12 S. C., 528; Thayer v. Hedges, 22 Ind., 282; Meyer v. Roosevelt, 25 How. Prac., 97; 10 Cent. Dig. Const. Law, 31 and cases cited; Paddleford v. Savannah, 14 Ga., 438. "The Federal Constitution is a grant of power," Spooner v. McConnell, Fed. Cas. No. 13,245; Pratt v. Allen, 13 Conn., 119; Purczell v. Smidt, 21 Iowa, 540; Page v. Allen, 58 Penn. St., 388, 9 Am. Dec., 272; Ex-Parte Mabry, 5 Texas App., 93; Logan v. State, 5 Texas App., 306.

The cattle were not transported from Valentine to Columbus in a continuous, uninterrupted journey, said cattle being shipped under local contracts only, providing for their transportation from Valentine to El Paso, Texas, and being therein consigned to plaintiff, and there delivered to plaintiff, and by it re-billed and re-shipped over the El Paso & Southwestern Railroad to Columbus, New Mexico. Gen. Oil Co. v. Crain, 209 U. S., 212; Coe v. Erroll, 116 U. S., 517; Brown v. Houston, 114 U. S., 622; Mer. Trans. Co. v. Bd. of Rev., 128 Iowa, 732; G. C. & S. F. Ry. Co. v. State, 204 U. S., 403; Int. Com. C. v. Cin., etc., Ry. Co., 56 Fed., 925; Ex-Parte Koehler, 30 Fed., 870; T. & P. Ry. Co. v. Taylor, 126 S. W. R., 1119.

Mr. Justice Phillips delivered the opinion of the court.

Wood-Hagenbarth Cattle Company, the defendant in error and the plaintiff below, in June, 1906, made four several shipments of cattle, consisting in all of eighty-six cars, from Valentine, Texas, to Columbus, New Mexico. The carriage from Valentine to El Paso was over the line of the plaintiff in error, and from El Paso to Columbus over that of the El Paso Southwestern Railway. Each of the several shipments moved from Valentine to El Paso on a bill of lading issued by the plaintiff in error, by the terms of which it contracted to transport the cattle only to El Paso, the shipment being consigned in each bill to the defendant in error at El Paso, or to be there delivered to the connecting carrier of the plaintiff in error. Each shipment was re-billed at El Paso for transportation from that point to Columbus, New Mexico, over the line of the El Paso Southwestern Railway, the connecting carrier.

The freight charges demanded and collected by the plaintiff in error for the transportation of the cattle from Valentine to El Paso, which charges were paid by the defendant in error under protest, were proper and lawful if the shipments were inter-state in character,

but amounted to an overcharge of $12.75 per car according to the tariffs of the Texas Railroad Commission if they were intra-state. Contending that the movement of the cattle from Valentine to El Paso was purely an intra-state shipment, the defendant in error brought this suit against the plaintiff in error to recover the alleged freight overcharge, aggregating $1,096.50, and the further sum of $2,000.00 as statutory penalties under Articles 4573 and 4575. Upon a trial without jury the trial court found both as a matter of fact and of law that the shipments were inter-state, and rendered judgment for the plaintiff in error. The Honorable Court of Civil Appeals has reversed that judgment and in its opinion holds the shipments from Valentine to El Paso to have been intra-state, having rendered judgment against the plaintiff in error for the alleged freight overcharge of $1,096.50, with interest, and aggregate penalties of $500.00. The question presented for our determination is whether the shipments were inter-state or intra-state.

In its findings of fact the trial court found that T. S. Kingsbury was the authorized agent and representative of the defendant in error and empowered to contract for it in respect to these shipments; that some time prior to June, 1906, he purchased for it certain cattle at Valentine, Texas, to be shipped from Valentine to Columbus, New Mexico; and from there to be driven across the border into Mexico to the ranch of the defendant in error. That with such shipment in view, after the purchase of the cattle, Kingsbury went to El Paso and there personally arranged with the agents of the two railway companies named for their shipment from Valentine to Columbus, it being agreed by the companies between themselves and with Kingsbury that they would furnish twenty-five cars for the shipment of the cattle, and as they were able to furnish only twenty-five cars at that time the entire shipment would have to be made in such manner as to enable them to move each consignment from Valentine to Columbus, to be there unloaded and return the same cars to Valentine to be there reloaded, and so on until the entire shipment was completed. That it was the intention of Kingsbury when he bought the cattle and when he shipped them, to ship them from Valentine, Texas, direct to Columbus, New Mexico. That each consignment of the cattle was transported direct from Valentine to Columbus in a continuous, uninterrupted journey, and in the same cars in which they were loaded at Valentine, without being unloaded at any intermediate point. That E. H. Anthony, another agent and representative of the defendant in error, under Kingsbury's directions accompanied each of the consignments from Valentine to Columbus, and acting on Kingsbury's instructions directed the conductor in charge of each of the trains of plaintiff in error to deliver the cars at El Paso to the connecting carrier, El Paso Southwestern Railway, for transportation over its line to Columbus.

Kingsbury testified as follows: "I suppose Anthony obeyed my instructions, and told the conductor of the G. H. & S. A. to turn the cars right over to the El Paso & Southwestern; * * * when I shipped them I had no intention of their stopping in El Paso longer than to transfer them to the other road, * * * and when at

Columbus to be received by the agent, and driven from there on to the ranch in Mexico."

Anthony, as a witness for the defendant in error, testified as follows: "I went with the cattle to Columbus; * * * I was on the train all the time from Valentine to El Paso; the same cars went right on through to Columbus. * * * The same cars were returned to Valentine for the next shipment. I would stay in Columbus just long enough to take the train back to El Paso. * * * It was the understanding between Mr. Kingsbury and myself that when I left Valentine with the train I was to take it right on through to Columbus, New Mexico."

As to whether the movement of the cattle from Valentine to El Paso was an inter-state or intra-state shipment must be determined by the following questions: What was the ultimate destination of the shipment at the time it was made? Though the ultimate destination may have been without the State, was there any break or interruption in the journey by any delivery of the cattle by the carrier to the consignee at El Paso?

If at the time the shipment originated its final destination was without the State, and it moved to such destination in a continuous and uninterrupted journey, unaccompanied by any delivery by the carrier to the the consignee within the State, it was clearly an inter-state shipment under the well established rules of this court upon this subject. On the other hand, if there was a delivery of the cattle by the carrier to the consignee within the State, it was an intra-state shipment, notwithstanding it may have been the intention of the shipper at the time the shipment was made that it should be transported to a point without the State as its ultimate destination.

In this case Columbus, New Mexico, was fixed and determined upon by the shipper as the destination of the cattle both before and at the time they were shipped. The course of dealing between Kingsbury and the railway companies in which he arranged for the cars, makes it plain that his purpose was to ship the cattle, not to El Paso, Texas, but to Columbus, New Mexico, direct, and by a continuous and uninterrupted journey, using the line of the plaintiff in error from Valentine to El Paso for one stage of the journey, and the line of the El Paso Southwestern Railway from El Paso to Columbus for its completion. It is equally plain from the facts found by the trial court that the shipment was thus made; that no delivery of the cattle by the plaintiff in error at El Paso was either contemplated or effected; that before the arrival of the cattle at El Paso, Anthony, who was in charge of the shipments as the representative of the defendant in error, directed that the cars be delivered to the connecting carrier to which they were delivered, and by it carried to destination, making a continuous journey from Valentine, Texas, to Columbus, New Mexico, without break or interruption.

In the opinion of the Honorable Court of Civil Appeals it is stated that the trial court, in addition to other facts found by it, hereinbefore substantially stated, found that the cattle were actually delivered by plaintiff in error at El Paso to Anthony, the agent of the defendant in error; and the learned judge writing the opinion of

that court rested it upon that ground. We here incorporate the additional findings of fact of the trial court referred to in the opinion of the Court of Civil Appeals, as follows:

"First. At the request of plaintiff, I further find that all the cattle in the four shipments involved in this suit were shipped under local contracts, reading in part as follows:

"From Valentine, Texas, to El Paso, Texas, W. B. Series L. Nos. —— to ——, dated June ——, 1906, said to contain ——— head of cows, from Valentine, Texas, Station, on the line of the first party to El Paso, Texas, Station, the end of the line of road operated by said first party on the route over which such stock are waybilled, there to be delivered to consignee or transferred to the railway company, over which said live stock are waybilled, for further transportation by said railway company, said stock being consigned to Wood-Hagenbarth Cattle Co."

"Second. I further find, that Valentine and El Paso are both points on the line of road operated by defendant company in Texas, and that all the line of road of the defendant company between said points is in Texas:

"That upon arrival at El Paso, the cars in which said cattle were shipped were set over on the siding or link of the El Paso Southwestern Railroad Company, under instructions of the plaintiff's agent in charge; and that defendant company gave no further directions as to the movement of the cattle after they were so set over; that they were after that forwarded to Columbus, New Mexico, under new contracts of shipment made and executed at El Paso, by and between the plaintiff and the El Paso Southwestern Railroad Company.

"Third. I find that E. H. Anthony, agent of plaintiff in charge of the four shipments, before the train reached El Paso, 'instructed the conductor to have that train set over on the Southwestern Link.' That in giving said instructions nothing was shown to have been said between plaintiff's said agent and the conductor in charge of the train as to what they were set over there for, or what was to be done with them after that.

"That after reaching El Paso, and after the cattle had been set over on the El Paso Southwestern Link, in obedience to the instructions of the plaintiff's agent, said agent went and looked them over, and then went to the Southwestern office, turned in his book and gave them instructions to ship the cattle; and signed up new contracts under which they were shipped from El Paso to Columbus, New Mexico."

We are unable to construe these findings of the trial court as a finding of fact that there was an actual delivery of the cattle by plaintiff in error to Anthony, the representative of the defendant in error, at El Paso, or conclude from them that there was any such delivery in law. On the arrival of the cattle at El Paso the cattle remained loaded in the cars. All that Anthony did was to direct that the cars be set over on the siding or link of the connecting carrier, doubtless to facilitate their transportation over its line, inspect the cattle, rebill them over that line, and instruct them to be forwarded. Did this amount to a "delivery" of the cattle to Anthony for the de-

fendant in error? The statement of what occurred forbids any such conclusion. While Anthony directed the plaintiff in error to set the cars over on the siding of the connecting carrier when they arrived at El Paso, the custody of the cattle was never out of the carriers, and his action in this respect was perfectly consistent with their custody of them. Nor does the fact that the bills of lading issued by the plaintiff in error provided for the carriage of the cattle only to El Paso, and that there Anthony re-billed them over the line of the connecting carrier alter the rule of law applicable to this case, or constitute this a local shipment as distinguished from an inter-state shipment. It is not necessary that all the carriers engaged in an inter-state shipment shall be parties to the contract of shipment for the entire route. Houston D. Nav. Co. v. Insurance Co. of N. America, 89 Texas, 1; 30 L. R. A., 713; 59 Am. St., 17. While in the bills of lading the cattle were consigned to the defendant in error at El Paso, to be there transferred to the connecting carrier of the plaintiff in error, the defendant in error did not take possession of them at El Paso. What did occur was their delivery to the connecting carrier for the purpose of the completion of their journey. We regard it as immaterial in this case whether this was done under the direction of Anthony or the plaintiff in error—a delivery, not to defendant in error, but to the connecting carrier, resulted. That the cattle were so delivered to the connecting carrier at El Paso at the express direction of Anthony precludes the view that he intended to there effect a delivery to himself for the defendant in error, or that any such delivery was in fact made.

The case is plainly distinguishable from that of Gulf, Colorado & Santa Fe Railway Company v. The State, 97 Texas, 274. The facts of that case are familiar and it is unnecessary to recite them any further than to say that there the Hardin Grain Company, having made a contract with parties at Goldthwaite, Texas, for the delivery of two car loads of corn at that place, in order to comply with their undertaking, contracted to purchase the same quantity of corn from Harroun Commission Company, which the latter company had previously arranged to ship from South Dakota to Texarkana, it being intended by the Hardin Grain Company that the corn would be shipped from Texarkana to Goldthwaite as soon as practicable after its arrival at Texarkana, as was done. This court held that the shipment from Texarkana to Goldthwaite was not an inter-state shipment, for the reason that although the intention of the Hardin Grain Company when it contracted to purchase the corn from the Harroun Commission Company, may have been as stated above, the destination of the corn, as fixed and determined by its consignors and then owners, when it started upon its journey, was, not Goldthwaite, but Texarkana, and when it reached that point the carriage so far was at an end.

It is likewise clearly distinguishable from the case of Texas & Pacific Railway Company v. Taylor, 103 Texas, 367, 126 S. W., 1118, 1200, for in the opinion rendered by Judge Brown in that case the holding that the shipment there involved was intra-state, was rested upon the fact that an actual delivery of the cattle was made to the

shipper at El Paso, although they were finally shipped to a point without the State.

In our view the case is governed by the rules announced in the opinion rendered in Houston D. Nav. Co. v. Insurance Company of North America, supra; and in consonance with the holding in that case it is our opinion that the shipments from Valentine to El Paso were inter-state in their character.

While not passed upon by the Court of Civil Appeals because unnecessary to the decision in its view of the case, the defendant in error in that court presented the question that the Interstate Commerce Act, in so far as it attempts to confer upon the Interstate Commerce Commission the authority to regulate commerce between a State and a Territory of the United States, is contrary to the Federal Constitution. As Congress possesses the undoubted power to legislate directly for a Territory, it seems to us that its authority to invest the Interstate Commerce Commission with the right to regulate commerce between a State and a Territory must be conceded.

The judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*