GULF, C. & S. F. RY. CO. et al. v. BOGER.
(No. 633.)

(Court of Civil Appeals of Texas. Amarillo. June 13, 1914. On Motion for Rehearing, Oct. 10, 1914.)

1. CARRIERS (§ 209*)—TRANSPORTATION OF ANIMALS—SUITABLE CARS—DUTY TO FURNISH.

A railroad carrier must furnish cars suitable to transport cattle offered for shipment, and it cannot shield itself from liability for failing to perform such duty by proving that the shipper agreed by the contract of shipment to inspect the cars furnished and reject them if improper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 925; Dec. Dig. § 209.*]

2. CARRIERS (§ 147*)—DOMESTIC SHIPMENTS—COMMON-LAW LIABILITY—LIMITATION.

In Texas, by statute a common carrier may not limit by contract its common-law liability as to domestic shipments, nor can it contract to relieve itself from its common-law liability for damages due to its negligence or that of its servants.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 637–640, 646–648; Dec. Dig. § 147.*]

3. CARRIERS (§ 218*) — TRANSPORTATION OF ANIMALS—DEFECTIVE CARS—CARRIER'S LIABILITY.

Where a cattle transportation contract provided that the shipper would inspect the cars furnished, see that they were properly fastened and sufficient for the journey, and report any defect therein, such stipulation was ineffective to relieve the carrier of its duty to furnish proper cars, or to exempt it from its common-law obligation, and if, as a result of the negligence of the carrier's servants or agents, proper cars were not furnished or securely fastened to prevent the escape of the cattle, and they did escape, the carrier was not relieved by such stipulation from liability therefor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

4. APPEAL AND ERROR (§ 1056*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Where cattle escaped from the cars in which they were shipped by reason of the carrier's negligence in failing to furnish proper cars and to securely fasten the same, and not by reason of any failure of the shipper to examine the cars and fastenings, the carrier was not prejudiced by the court's exclusion of a provision of the shipping contract requiring the shipper to examine and report any defects in the cars and fastenings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. § 1056.*]

5. CARRIERS (§ 227*)—TRANSPORTATION OF ANIMALS—BEDDING CARS.

Where plaintiff's cattle were injured as the alleged result of a failure to properly bed the cars, and the carrier pleaded a provision of the shipping contract that the shipper agreed to bed the cars, but did not allege that the carrier was exempt under the contract from its duty to do so or that the shipper, in fact, undertook to put in the bedding, the answer was defective for failure to further allege that the shipper was given an opportunity to do so, and that, if the cars were not properly bedded, it was through the shipper's default.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 232, 953–956; Dec. Dig. § 227.*]

6. CARRIERS (§ 218*) — TRANSPORTATION OF CATTLE—BEDDING CARS.

Where a carrier furnished cars to transport plaintiff's cattle, and undertook to bed the cars with sand before the cattle were loaded or the shipping contract signed, it could not thereafter rely on a provision of the contract subsequently executed requiring the shipper to bed the cars, in order to relieve it from liability for a failure to provide proper bedding.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

7. VENUE (§ 22*)—PLACE OF SUIT—ACTION AGAINST CARRIERS—BREACH OF CONTRACT—CONVERSION.

Where certain cattle purchased by plaintiff from D., after having been placed in cars for transportation, were permitted to escape from the cars by the carrier's negligence, and, having returned to D.'s ranch, he refused to surrender them to the carrier on demand, such act did not render him a party to the carrier's contract; and hence, in an action by plaintiff for breach of the carrier's transportation contract, D. could not be joined and required to answer in a county other than that in which he resided or in which the alleged conversion occurred.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. § 22.*]

On Motion for Rehearing.

8. CARRIERS (§ 227*) — TRANSPORTATION OF LIVE STOCK—NOTICE OF INJURY—VARIANCE.

In an action against connecting carriers for loss of, and injury to, cattle, all of the defendants introduced the bill of lading of the initial carrier, which provided that the shipper should give notice of claim within 91 days. The answer of two of the carriers set up that the notice required after damage should be presented within 120 days, but did not allege that such defendants made separate contracts from that made by the initial carrier. Held that, such defendants not having alleged that they did not ac-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cept or acquiesce in the through bill of lading issued by the initial carrier, such bill would be regarded as the contract of each and all the connecting carriers, as provided by Rev. St. 1911, arts. 713, 732; and hence the allegation that the contract provided for notice within 120 days followed by proof of a contract calling for 91 days' notice, constituted a variance.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 232, 953–956; Dec. Dig. § 227.*]

Appeal from Clay County Court; W. T. Allen, Judge.

Action by M. W. Boger against the Gulf, Colorado & Santa Fé Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed in part and reversed in part. Rehearing denied.

Thompson & Barwise, of Ft. Worth, Taylor & Humphrey, of Henrietta, and H. E. Hoover, of Canadian, for appellants. Woodward & Baker, of Coleman, for appellant Dunman. Wantland & Parrish, of Henrietta, for appellee.

HUFF, C.-J. M. W. Boger, the appellee, brought suit against the Pecos & Northern Texas Railway Company, the Abilene & Southern Railway Company, the Ft. Worth & Denver City Railway Company, and the Wichita Valley Railway Company. The cause of action alleged by appellee is substantially that he shipped eight cars of cattle from Novice to Jolly, Tex., and to Vernon, Tex. He alleges the cattle were depreciated in value on account of the negligence of the defendant railway companies in improperly bedding the cars and improperly handling the same while in transit, and delaying them beyond the usual and ordinary time in making said shipments. He alleges that one of the animals was killed en route by the negligence, and that 14 head were lost, and asked for damages for the value of the 15 head and for depreciation in the value of the remaining, aggregating the sum of $994.

The railway companies each answered, and the Abilene Southern Railway Company brought in or made a party Theo. Dunman to the suit. The allegation making Dunman a party will be noticed later in the opinion. The Pecos & Northern Texas Railway Company answered by general denial, etc., and further set up the following provision of the contract of shipment:

"The shipper agrees at his own cost and expense to properly bed the cars in which the stock are to be transported and in all respects put them in proper condition for shipment of said stock, and also agrees that before the cars in which said stock are to be transported leave the first-named station that he will carefully examine the same, and that if any defect or deficiency whatever be found in said cars that he will at once report the fact to the station agent of the company and demand in writing another car or cars in lieu thereof, and if the shipper shall fail to make such demand it shall then be conclusively presumed that said cars and each of them are in all respects suitable for the transportation of said stock and the shipper agrees to assume, and not hold the company liable for, any damage that may occur to the stock on account of any defect in the car or any of them, which were not so reported to the company's said agent in writing. The shipper further agrees to see that the cars are securely fastened so as to prevent the escape of stock therefrom and that he will not hold the company responsible for any loss or damage that may result from a failure or neglect on his part or of his agents or employés to so do, and also agrees to assume all risk of injury or loss of or to said stock because of any defect in said cars," etc.

The defendant railway company alleged that "if said cattle escaped from the cars after being loaded and there was a defect in the car or cars at the time the cattle were loaded, which is denied, then under the provisions of said contract it is not responsible therefor, and plaintiff cannot recover," and that it was the duty of the shipper to discover such defect, if any, both before and after the cattle were loaded and at all times while en route, and that his failure to do so was the proximate cause of his loss, if he suffered any. It is further alleged that under the express provision of the contract that it was expressly agreed and understood in case of shipment over the line or lines of connecting carriers that the provision of the contract so entered into should inure to their benefit and to have full force and effect as against plaintiff.

Each of the remaining defendant railway companies adopted, in the main, the answer of the Pecos & Northern Texas Railway Company; the Ft. Worth & Denver City Railway Company setting up a provision of the contract. it made with Boger, to the effect that he should give notice within 120 days after the damage was received as a condition precedent to his right to sue, etc.

In answer to the Abilene Southern Railway Company, Theo. Dunman answered by a plea of special privilege to be sued in the county of his residence, to be noticed later on in the opinion.

It is urged by the first assignment of error presented by the appellants the railway companies that the trial court was in error in excluding the paragraph of the Pecos & Northern Texas Railway Company, set out in the answer of that road. The appellee objected to its introduction on the ground that to hold the plaintiff to such requirements would be unreasonable and illegal and an undue restriction of the carrier's liability, and that the portion of the contract so pleaded is in violation of the carrier's common-law liability; that the cars furnished were shown to be the only cars furnished by the railway, and they were fastened by the carrier or by the carrier's employés, and no request was ever made that plaintiff see to the fastenings, bedding, and inspection of the cars; and that the contract was immaterial and irrelevant. It will be noticed that the contract requires the shipper to see that the cars are securely fastened, carefully inspected, and

to examine the same and report any defect to the station agent in writing. In this case the appellant railway companies plead that, if the cattle escaped from the cars after being loaded on account of the defect of the car or cars existing at the time they were loaded, under the provisions of the contract the railway companies were not liable. There is evidence which would authorize the jury to find that the 14 head of cattle escaped from the cars while the cars were standing on the transfer track of the Abilene Southern Railway Company at Tuscola, or between that point and Abilene. It is shown that the car doors of one or two of the cars were out of repair, and not properly fastened at Abilene, from which cattle could have escaped.

[1] It is the duty of the railroad company to furnish a car suitable to transport the cattle, and it cannot shield itself by proving that the shipper was to examine the car as to its fitness to transport this property. Hunt v. Nutt, 27 S. W. 1031; Ry. Co. v. Dolan, 85 S. W. 302; Ry. Co. v. Trawick, 80 Tex. 270, 15 S. W. 568; Ry. Co. v. Montgomery, 16 S. W. 178; Ry. Co. v. Wilhelm, 3 Willson, Civ. Cas. Ct. App. § 460.

[2] In this state, by statute, a common carrier cannot limit its common-law liability by contract on domestic shipments (Railway Co. v. Trawick, 68 Tex. 314, 4 S. W. 568, 2 Am. St. Rep. 494; Ry. Co. v. Brooks, 145 S. W. 649); and further, in this state, as well as nearly all other jurisdictions in the Union, a carrier, by contract, cannot relieve itself from its common-law liability for damages occasioned by its negligence or that of its servants and agents (6 Cyc. 392; Ry. Co. v. Dolan, 85 S. W. 302; Ry. Co. v. Wood, 30 S. W. 715).

"Even if the acceptance of the goods is special, the burden of proof is still on the carrier to show not only that the cause of the loss was within the terms of the exceptions, but, also, that there was on his part no negligence or want of due care." Ryan v. Railway Co., 65 Tex. 13, 57 Am. Rep. 589.

In this case, under the stipulation excluded, the appellee was required to examine the cars and the fastenings, "and agrees to assume, and not hold the company liable for, any damages on account of the defects in its cars and not so reported." It was the railroad's duty to furnish proper cars for the transportation of the cattle and to fasten the cars to prevent their escape and to safely transport them to their destination.

[3] If the appellee assumed to see that the cars were properly fastened and that the cars were sufficient for the voyage, and report any defect therein, this would not relieve the appellant of its duty to furnish proper cars or exempt it from its common-law obligation, and if from the negligence of the agents or servants of appellants, proper cars were not furnished or securely fastened, so as to prevent the escape of the cattle, this provision of the contract would not exempt it

from liability. Allen v. Railway Co., 82 Neb. 726, 118 N. W. 655, 23 L. R. A. (N. S.) 278. Appellee, by contract, was only required to examine the cars; he was not required to fasten or secure the cars by contract. His failure to do so would not relieve appellant from its duty, and a contract so relieving the carrier would be void under our statute, and in so far as the contract attempted to exempt the appellant from damages occasioned by its own negligence, it is void under all or nearly all the authorities.

[4] The evidence in this case or the pleadings do not show that the failure to examine the car and the fastening was the proximate cause of the escape. Unless this was shown by the evidence, no injury resulted to the appellants by the exclusion of the provision of the contract. If the cattle escaped from the negligence of appellants in failing to furnish proper cars and in failing to securely fasten the same, appellant by showing a contract exempting such carrier from liability occasioned by its negligence, under the law could not be relieved from its duty and consequent damages resulting from its negligence.

[5] The clause offered in evidence also has within it a clause to the effect that the shipper agrees at his own cost and expense to properly bed the cars. The appellant, by its answer, copies the entire clause, but does not allege that it was exempt, under the contract, from the duty of bedding the cars, or that the appellee, in fact, undertook to bed the same. The appellee, by supplemental petition, alleges that the appellant itself undertook to bed the cars, and he testified that it attempted to bed the cars with a few buckets of sand, and that the appellee protested that this bedding was insufficient and demanded more. If by the terms of the contract the appellee was to bed the cars, we think the answer should further allege that he was given an opportunity to do so, and that, if they were not so bedded, it was through his fault. The answer fails to allege circumstances which show that the failure to bed was the fault of appellee. Ry. Co. v. Dishman, 41 Tex. Civ. App. 250, 91 S. W. 828; Ry. Co. v. Davis, 88 Tex. 593, 32 S. W. 510; Ry. Co. v. Edwards, 75 Tex. 334, 12 S. W. 853.

[6] The facts are uncontroverted in this case that the railroad undertook and assumed the duty of bedding cars. Having done so, before the cattle were loaded and before the contract was signed, we think appellants should not be permitted, at this time, to rely upon the exemption stipulated for in the contract, from its duty which it had already attempted to discharge when the contract was executed. Ry. Co. v. Dolan, 85 S. W. 303; Ry. Co. v. Savage, 41 S. W. 663; Ry. Co. v. Kingsbury, 25 S. W. 322. As stated, the undisputed testimony shows that appellant assumed the duty of bedding the cars, and the bill of exceptions to the action of the

court in excluding this paragraph does not show that, had the clause been admitted in testimony, the railroad company could have proven or would have shown the facts that rendered appellee liable to the duty or have shown that the railroad company did not, in fact, assume the duty. Mr. Boger, the appellee, while admitting he knew he would be required to sign the contract, testified that he, in more than 30 years' experience, had never bedded cars for shipments of cattle, but that the railroads always performed that service. These facts are in no way controverted. If, under the pleadings, the clause was admissible, we think under the uncontroverted facts, no injury has been shown, and this assignment will be overruled.

The second assignment complains of the ruling of the trial court in excluding the provision of the contract with the Ft. Worth & Denver City Railway Company requiring notice of damages for delay or decline in the market to be presented to the railway company within 120 days after the injury had been occasioned. This provision was set up in the answer of the Ft. Worth & Denver City Railway Company alone, and in no other, and was not sworn to as required by article 5714, R. S. 1911. Hence notice will be presumed to have been given. Ry. Co. v. Honea, 84 S. W. 267. The initial contract was made with the Pecos & Northern Texas Railway Company, and purports to have been made for the benefit of all the connecting carriers, for the through shipment to the points of destination. The shipments appear to have been made throughout the route in the same cars over the various lines of defendant roads. It may be questioned whether the stipulation in the Ft. Worth & Denver City Railway Company's contract could in any event be treated as a binding stipulation, for the reason that it was not the contract of shipment originally made. Ry. Co. v. Wood-Hagenbarth Cattle Co., 105 Tex. 178, 146 S. W. 538; Elder v. Railway Co., 105 Tex. 628, 154 S. W. 975. This assignment will be overruled.

We overrule the fourth and fifth assignments, as we find no prejudicial error in the action of the court in admitting the testimony of which complaint is made. The evidence, we think, is sufficient to support the items of damages allowed by the jury for the injuries received by the cattle delivered.

[7] Theo. Dunman also appeals, and assigns error in this case from the verdict and judgment of the trial court. The jury found in favor of Boger against the railway companies, the sum of $947.50, and found in favor of the Abilene & Southern Railway Co., against the defendant Theo. Dunman, for the sum of $518, for which judgment was rendered. Boger alleged:

"On the 25th day of January, 1913, plaintiff was the owner and in possession of 489 head of steer cattle, sound, in good going condition, and suitable for shipment, which on or about said date he tendered to the defendant the Pecos &

Northern Texas Railway Company, at Novice, for transportation as follows: 310 head of them to be transported to said Jolly, Clay county, Tex., and 179 of them to be transported to said Vernon, Wilbarger county, Tex., which said cattle were then and there accepted by the said named defendants for immediate transportation aforesaid, and the defendants, and each of them, agreed and bound themselves and became and was the duty of them and each of them, upon receiving said cattle herein alleged, to transport the same to their respective destinations"

—alleging also the loss of 14 head of cattle en route. The Abilene & Southern Railway Company, in their answer, set up a cross-action as follows:

"Further replying herein, this defendant says that if it is true, which this defendant denies, that plaintiff lost 14 head of cattle in his shipment of said cattle from Novice to Vernon, Tex., as alleged by plaintiff, that 14 head of cattle escaped from the cars while they were standing on the transfer track at Tuscola, and escaped without any fault on the part of this defendant, and before it had accepted them for shipment, and that said 14 head of cattle were subsequently recovered by Theo. Dunman, and that said Dunman is now claiming said cattle as his own, and has at all times refused to turn over said cattle to this defendant for plaintiff, and that said Dunman has wrongfully converted said cattle to his own use and benefit."

Upon this cross-petition, Dunman was cited to appear and answer the suit then on file in the county court of Clay county, Tex. In due and proper time, and in due order of pleading, Dunman set up his plea of privilege to be sued in the county of his residence, which is alleged to be in Coleman county, Texas, and that he was informed that said railway company would attempt to show the conversion of the cattle, either in Coleman county, Tex., or at Tuscola, Taylor county, Tex. The plea of privilege to be sued in his county was properly and formally made and sworn to, and in other respects complied with the law in regard to such pleadings.

The facts in this case show that Boger purchased the cattle shipped from Theo. Dunman in Coleman county, Tex., and that he shipped them from Novice to Vernon and Jolly; that he billed out 179 head of steers to be shipped to Vernon, and that upon arrival at that place there was one dead in the car and 14 missing. The facts further show that Tuscola is at the crossing of the Pecos & Northern Texas Railway Company and the Abilene & Southern Railway Company, and that the cars of cattle were placed on the passing or transfer track at that point and remained there some time; and, further, that the car doors of some of these cars were out of repair when they arrived at Abilene, a short distance from Tuscola, and were in such condition that cattle could have escaped from the car. The testimony further shows that after these cars were picked up by the Abilene & Southern Railway Company, within the inclosure of the Railroad Company, inclosing the transfer track, shortly after the cars were there, there was seen some 11 head of cattle, answering the description of

the cattle shipped, and 3 others in the lane. Shortly thereafter a party was seen driving these cattle, or cattle answering their description, who is sufficiently identified, and who afterwards testified that Dunman came to his place and claimed the cattle as his and took them to the ranch. The evidence further shows that Tuscola was about seven miles from Dunman's ranch. Boger, some few weeks afterwards, investigating the ground around the passing track, says that he found cattle tracks at a place on the dump, evidencing the escape of cattle from the cars, and further stated that he examined the cattle in the possession of Dunman, and positively identifies some 5 or 6 head, and believed to the best of his judgment that 14 head were cattle that he had purchased from Dunman. This, perhaps, will be a sufficient statement of the facts to present the questions involved in Dunman's appeal. Dunman requested that the court instruct the jury, under the pleadings and facts in this case, to find for his plea of privilege to be sued in either Coleman or Taylor county. He assigns error upon the refusal of the court to so charge, and also assigns error upon the refusal of the court to grant a new trial upon the ground that the testimony is not sufficient to render judgment against him in Clay county. We should state that the evidence is uncontroverted that Tuscola is in Taylor county, and that Dunman resides in Coleman county, and resided there at the institution of the suit, and had for some 30 years, and was residing there at the time of the trial and at all others times since the institution of the suit.

Plaintiff Boger based his right of recovery upon the failure of the defendant railway companies to deliver 14 head of cattle which they had contracted to deliver. Clearly Dunman was not a party to this contract and a breach thereof would give no right of action against him. The venue of the suit could not therefore be fixed by making him a party. If he is liable at all, he is liable for the wrongful conversion of the cattle or for the cattle; if such had been the nature of the suit, then the parties participating in the conversion could be joined and they would be proper parties to such an action. This being a suit for damages, based upon the breach of a written contract, the venue as to such must be fixed by the statutes. Article 1830, subds. 4, 25. It is asserted by the railway companies that Dunman, having willfully converted the cattle while in the actual or constructive possession of the railway company, made himself a party to the contract, by unlawfully interfering with the performance of the contract of delivery, and in support of this proposition they cite the cases of Raymond v. Yarrington, 96 Tex. 443, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914; Lytle v. Galveston, 100 Tex. 292, 99 S. W. 397, 10 L. R. A. (N. S.) 437; Angle v. Railway, 151 U. S.

1, 14 Sup. Ct. 240, 38 L. Ed. 55. If we shall admit that Boger had a cause of action against Dunman for causing a breach of the contract for the delivery of the cattle, in order to recover he would have been required to so allege his cause of action and to have instituted his suit in the county of Dunman's residence or the county of the alleged trespass. We do not think the two causes are properly joined in this case. If, however, they could be joined, it cannot be so done as to defeat Dunman's right to be sued in the county of his residence and to fix the venue in Clay county. In the case of the quasi contract there is an entire absence of the contractual elements. The purpose is not to pay, but the intention is to convert to the use of the tort-feasor.

"In this case the law implies against his will the obligation to restore to the true owner what has been taken, and out of this obligation a promise is inferred which permits the party wronged to waive the tort and sue in assumpsit." Simkins on Contracts and Sales (3d Ed.) 472.

The suit was not instituted by Boger on such a contract. If it had been so brought by him, it could not, we think, be contended successfully that the venue, under subdivisions 4 and 25, art. 1830, was properly laid in Clay county. Boger having failed to so bring the suit, the defendant railway companies cannot, in a suit where the venue was properly laid as to them, set up a cause, based upon a different contract to the one in suit, or upon a different tort, and thereby compel Dunman to answer therein when he pleads his privilege to be sued in the county of his residence, or of the alleged trespass. In order to entitle the railroad company to sue in a county other than Dunman's residence, it must bring its cause clearly within some clause named in the statute. Behrens Drug Co. v. Hamilton, etc., 92 Tex. 284, 48 S. W. 5; Holloway v. Blum, 60 Tex. 625; Railway Co. v. Mangum, 68 Tex. 342, 4 S. W. 617; Ft. Worth, etc., v. Smith, 149 S. W. 200. We hold that the court should have, under the evidence, instructed the jury to have found for Dunman on his plea of privilege. The case will be affirmed as to Boger against the railway companies and reversed as to Dunman, with instructions to the trial court to change the venue to either Taylor county, the place of the alleged trespass, or to Coleman county, Dunman's residence.

Affirmed in part and reversed in part.

### On Motion for Rehearing.

[8] In the original opinion, we stated, in disposing of the second assignment of error, that one of the appellants, the Ft. Worth & Denver City Railway Company, was the only defendant setting up a provision of the contract requiring 120 days' notice of damage for loss, injury, delay, or decline in the market as a condition precedent to the right to sue for damages, and further stat-

ed that this plea was not sworn to. In this statement we were in error. The plea was sworn to, and the plea was made jointly by the Ft. Worth & Denver City Railway Company and the Wichita Valley Railway Company. The appellee Boger excepted to this answer: (a) Because the reply does not state facts tending to show that such stipulation in said contract was reasonable; (b) because the said contract, as quoted in defendant's said answer, shows upon its face the right of the general freight agent or auditor of said defendant to waive such notice, and said answer does not show that such waiver was not given. The court sustained these exceptions, and struck out that part of the answer. If the court was in error in sustaining the exceptions as made, the question is: Was it such an error as will reverse the case? The contracts of shipment were made between M. W. Boger and the Pecos & Northern Texas Railway Company January 15, 1913, at Novice, a station on that road. The contracts bound that road and the connecting carriers to deliver the cattle of M. W. Boger—eight cars of cattle—at Jolly, Clay County, Tex., and four cars at Vernon, Tex. The consideration was stated therein and the contracts provided that their terms should apply and inure to the benefit of each connecting carrier, and all of the defendant railway companies joined in the introduction of these contracts. The Ft. Worth & Denver City Railway Company was the delivering carrier in both shipments, and the Pecos & Northern Texas Railway Company was the initial carrier. The Pecos & Northern Texas Railway Company's contracts had a 91 days' provision, and set up a failure of Boger to give notice in accordance therewith. Upon exception by Boger this plea was stricken out. There is no assignment briefed to this action of the court. The statement of facts shows that all the defendant railway companies introduced the Pecos & Northern Texas bill of lading, and that bill of lading so introduced provides that the shipper should give notice of the claim for damages to the railway company in writing within 91 days after damages occurred. The answer of the Ft. Worth & Denver City Railway Company and the Wichita Valley Railway Company set up that the notice required to be given after damage was to be presented within 120 days. The answers of these two roads do not allege that they made separate contracts from that entered into by the Pecos & Northern Texas Railway Company, the initial carrier. We think that the Denver Railway Company, by its answer, having failed to allege that it did not accept or acquiesce in the through bill of lading executed by the Pecos & Northern Texas Railway Company, that articles 731 and 732, R. C. S., will apply, and that the contracts made by the initial carrier will be deemed to be the contracts of each of

such connecting common carriers. It will be noted that the answer of the defendant the Ft. Worth & Denver does not allege that the provision set out was independent of the original contract made by the initial carrier, and the contract introduced in evidence in this case providing for 91 days was clearly a variance from the allegations of the Ft. Worth & Denver City, and this road does not allege that it was on one of its bills of lading or blanks, or that it was a new and independent contract from that originally entered into by the initial carrier, but simply alleges that it was made for a valuable consideration before the transportation of said cattle was undertaken by the defendants.

Under the facts as proven and under the condition in which we find the pleadings, we hold that there was no error showing injury in sustaining the exceptions of Boger to the Ft. Worth & Denver City Railway Company's answer.

We have concluded that the motion should be overruled.