ST. LOUIS, S. F. & T. RY. CO. et al. v. BIRGE–FORBES CO.†

(Court of Civil Appeals of Texas. Dallas. June 10, 1911. Rehearing Denied June 30, 1911.)

1. COMMERCE (§ 34*)—REGULATION—FOREIGN COMMERCE.

A contract by a railway company for through shipment to foreign seaports by way of domestic seaports for a through rate is not controlled by the interstate commerce law (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), even though the rate paid by the railroad for the ocean transportation reduced the inland rate to less than the tariff rate to the domestic seaport.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 34.*]

2. CARRIERS (§ 69*)—SHIPMENT CONTRACTS—INVALIDITY—BURDEN OF PROOF.

Where the petition on a shipment contract discloses a legal contract, the burden to establish its illegality as violating the interstate commerce law (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) is on defendants.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 69.*]

3. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—ACCOMPANYING STATEMENT.

An assignment of error is not entitled to consideration under Court of Civil Appeals rules, where reference is made to all the testimony copied in a statement under another assignment of error, and such testimony includes

---

much matter not bearing on the particular assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**4. LIMITATION OF ACTIONS (§ 199*)—EVIDENCE —QUESTION FOR JURY.**

In a suit against railroad companies on a contract for shipment of cotton to foreign ports, evidence *held* to raise an issue as to whether maturity of plaintiff's claim was postponed, as affecting the running of limitations, by a custom preventing such claims from becoming due until expiration of a reasonable time after presentation.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 199.*]

**5. LIMITATION OF ACTIONS (§ 24*)—WRITTEN FREIGHT CONTRACTS.**

An action against railroads on a written contract to carry freight to a foreign port is governed by the four, and not the two, years statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 24.*]

**6. TRIAL (§ 200*)—INSTRUCTIONS—LEGAL EFFECT OF WRITINGS.**

In an action against railroads on a freight contract, the *court properly instructed as to* the legal effect of telegrams which disclosed the making of the contract sued on.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 471; Dec. Dig. § 200.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by the Birge-Forbes Company against the St. Louis, San Francisco & Texas Railway Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Andrews, Ball & Streetman and Head, Smith, Hare & Head, for appellants. J. A. L. Wolfe and J. F. Holt, for appellee.

TALBOT, J. This is an action prosecuted by the appellee against the appellants, the St. Louis, San Francisco & Texas Railway Company and the St. Louis & San Francisco Railroad Company, to recover the sum of $1,812, with interest.

It is alleged, in substance, that in September, 1904, Birge-Forbes Company made a written contract with appellants, whereby appellants agreed and undertook to transport 20,000 bales of cotton through to the European ports of Liverpool, Bremen, and Havre from Sherman, Tex., and Ada, Okl., at the through rate of 92 cents per 100 pounds from Sherman and $1.02 per 100 from Ada; that the rates stated included shipment from the domestic to the foreign seaports, and by means of what is called "first-class liners," but that the appellants had the right to ship by inferior class of liners, provided they would protect the said Birge-Forbes Company in the extra amount it had to pay for insurance by reason of this fact, which is called, in the language of the trade, "equalization of insurance"; that by first-class liners was meant a line of steamships which, by reason of high-class owner-

ship, construction, etc., carried the lowest rate of insurance on its cargo, and by "second-class" and "tramps" were meant inferior classes of ships, which carried a lower rate of freight, which appellants would have to pay; that said cotton was shipped from the domestic to the foreign seaports by a class of ships inferior to first-class liners, by reason of which fact Birge-Forbes Company had to pay for insurance $1,812.60 more than they would have had to pay, had the cotton moved via first-class liners; that after the making of said contract, and after the shipping of said cotton thereunder, the said Birge-Forbes Company ceased to do business, and the appellee, the Birge-Forbes Company, was incorporated and took over and acquired all the assets of the said Birge-Forbes Company, and is the equitable owner and holder of the claim sued on. The defenses pleaded were a general denial and the two and four year statutes of limitation.

In reply to the pleas of limitation, appellee alleged that the contract was in writing; that under the general custom and usages of the cotton trade, well known to all parties, claims of this character would not become due and payable until the carrier had a reasonable time to investigate the claims after their presentation, and that such reasonable time is one year after presentation of claim, and that the claim herein was presented immediately after the payment of the last item of insurance; that defendant requested much more than one year in which to make such investigation, and represented to plaintiff, in order to get the time in which to investigate said claim extended, that defendants, in event suit would have to be filed, would not plead the statutes of limitation, and relying upon said representation the plaintiff did not file this suit until the time it was filed, and defendants are now estopped from pleading limitation. A trial before a jury on the 14th day of May, 1910, resulted in a verdict and judgment in favor of appellee for $1,812.60, principal, and $465.73, interest, to reverse which this appeal is prosecuted.

[1] The first assignment of error complains of the court's refusal to instruct the jury to return a verdict for appellants. The proposition advanced under this assignment is that "both the petition and the undisputed evidence disclose that this suit is based upon an alleged special contract between a shipper and a common carrier for the transportation of cotton, controlled by the provisions of the act of Congress known as the 'Interstate Commerce Law,' and upon terms not authorized by said act, and that said alleged contract is therefore illegal, null, and void, and can furnish no basis for the recovery here sought." We do not think this proposition is sustained by the record. On the contrary, we think, as contended by appellee,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep't Indexes

that neither the pleadings nor the evidence discloses that the suit is based upon a contract violative of the provisions of the interstate commerce law. It appears that the contract entered into stipulated for a through rate and through shipment of the cotton in question from Sherman, Tex., and Ada, Okl., to domestic seaports, and thence to foreign seaports; appellee having no contractual relation whatever with the ocean carrier. This being true, the contract, we think, was entirely legal, even though it be true, which does not appear, that the rate paid by appellants for the ocean voyage reduced the inland rate to less than the tariff rate from the point of origin to the domestic seaport. H. G. Wilson, appellants' foreign freight agent, and who represented them in the making of the contract upon which this suit is based, testified, in substance, that he had made a contract with steamships covering ocean voyage of cotton; that he had made several contracts with steamships; that he had made a contract with steamships at the time he made the Birge-Forbes contract, and that he applied part of the 20,000-bale contract to his steamship contracts, and that he applied some of the cotton to contract not then made. The witness Birge testified: "I didn't get any better railroad rate than anybody else. The variation in these rates does not affect the railroad. I supposed the railroad got its full proportion, but I had nothing to do with that."

We think the instant case distinguishable from Armour v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681; the distinguishing characteristics being, as pointed out by counsel for appellees, that Armour had made the contract for the ocean voyage of his products, and the carrier had no contractual relation with the steamships. In this case appellants made the contract for the ocean voyage of the cotton, and appellee had no contractual relation whatsoever with the ocean carrier, and knew nothing of the rates to be paid for the ocean voyage. The Armour Case is a typical rebate case. Armour and the carrier entered into a contract for shipment of a very large quantity of his products from his packing houses to the domestic seaports for a certain rate. After making this contract and after it had become binding on both parties, the railroad company proceeded to increase the rate between said points, seeking to make other packers pay the increased rate, thus giving to Armour a very decided advantage in rates. Armour made the contracts for the ocean voyage, as stated, informing the inland carrier of the rate agreed upon for the ocean shipment, and the inland carrier in the bills of lading given added the two rates and gave through bill of lading, which was undoubtedly a device to conceal the amount he was paying for the inland voyage. We do not, therefore, regard the Armour Case as authority controlling the decision of the case at bar. Nor do we think either of the other cases cited by appellants is in point. In the present case the proof, as we understand it, shows that there was no tariff promulgated covering the shipments of the appellee. And, in view of the fact that the ocean rates are shown to be fluctuating and changing almost daily, it is quite difficult to see how a tariff could be filed covering such shipments as are involved in this case. In the case of the Texas & Pacific Railway Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940, cited by appellee, it is held, in effect, that a contract for shipment from a foreign country, even though the proportion of the freight rate for the inland shipment from the domestic seaport to the interior destination in the United States is less than the regular tariff covering shipments between the inland seaport and such interior destination, does not violate the interstate commission law. If, therefore, a through contract infringing upon the tariff, as in the case referred to, is valid when applied to imports, there seems to be no good reason why it should not be held to be valid when applied to exports.

[2] Again, the appellee's petition disclosed a legal contract, and the burden of establishing that it was illegal was upon the appellants. This would require appropriate pleadings and proof of the facts showing such illegality. Such was not done by appellants, as we understand the record. We agree with the view that the record does not definitely show what the appellants paid for the ocean voyage. Their agent, Wilson, testified that he based his estimate of the fare for the ocean voyage on first-class liners, and that the estimate proved to be about correct, and, as we construe his testimony, it shows what appellants paid for first-class service, and not what they actually paid in this case; that he (Wilson) estimated that what they paid for first-class service ran from 26 cents to 33 cents. He says: "This 32 cents that I took into consideration I figured would be just about the average prevailing rate for first-class liners for the season, so far as first-class service was concerned; in other words, I took into consideration first-class rate." It may be added that we have discovered no testimony in the record showing that the cotton shipped would have moved from either Sherman, Tex., or Ada, Okl., via the points shown in the interstate commerce tariff sheets, introduced in evidence by the appellants. We conclude the assignment should be overruled.

[3] The second assignment of error complains of that portion of the court's charge wherein the jury was instructed, in effect, that if, at the time the contract of shipment was made, it was the rule and custom of all parties to such contracts for a railway company to have a reasonable time, after it had been notified by the parties shipping the cotton that said parties had a claim for the

equalization of insurance, to investigate said claim before same would become due, and they further believed from the evidence that the parties to this contract of shipment knew and understood such rule and custom, and made such contract of shipment in view of said rule and custom, then the plaintiff's cause of action herein did not accrue until defendants, had had a reasonable time within which to investigate said claim. The proposition presented is that the evidence was not sufficient to authorize the submission to the jury of the issue as to whether the maturity of appellee's claim was postponed, so that suit could not have been commenced thereon until after April 22, 1905, by reason of a custom which prevented such claims from becoming due until the expiration of a reasonable time after actual presentation. This assignment is not supported, as is required by the rules prescribed for briefing a case, by such a statement of the evidence or proceedings as is necessary and sufficient to explain and support the proposition, and is therefore not entitled to consideration. The statement is: "All of the evidence bearing upon the existence and effect of the alleged custom is set forth in the testimony of N. B. Birge and H. G. Wilson, copied in statement to first proposition, first assignment above." The testimony of these witnesses comprises about 40 pages of appellant's brief, very much of which bears upon matters having no connection with or relation to the rule and custom referred to in the court's charge, and to find the testimony relating to this particular issue would require the reading of this entire testimony. This we are not required to do.

[4] But, waiving this matter and looking to the testimony, we find it was sufficient to authorize the submission of the issue. The witness Birge testified very positively to the existence of the rule and custom mentioned in the court's charge, and the record discloses no denial of it by the witness Wilson or any other witness, so far as we have been able to discover. Indeed, Mr. Wilson himself testified, in effect, that under the usual course of dealings the appellants were not expected to pay a claim like the one sued on, until they had a reasonable time within which to investigate it; that such was the usual and customary course in matters of that character.

[5] There was no error in refusing to charge the jury, as requested by appellants, that the undisputed evidence shows that plaintiff's account accrued more than two years before the same was sued on, and was therefore barred by the statute of limitation. We think the four, and not the two, year statute of limitation applies to the cause of action set forth in appellee's petition. A written contract is declared on, and the proof shows such contract. It is true a part of the cotton was moved under a subsequent arrangement as to the rate of freight; yet this, too, was in writing. Appellant's agent, Wilson, testified: "The negotiations subsequent to the contract with reference to the reduction of rate to the best of my recollection were by telegraph. I haven't copies of these telegrams. They were, of course, part of the office files. Probably there was several days of telegraphic correspondence which probably resulted in the reduction of the rate and advice to that effect to the shippers."

[6] Nor did the court err in charging the jury that "the various telegrams between Birge-Forbes Company and H. G. Wilson, representative of the defendant railway companies, disclose that a contract was made between Birge-Forbes Company and the said Wilson for the defendant companies, for the transportation of 20,000 bales of cotton to various foreign ports, said transportation to be made during the months of September, October, November, 1904, for 92 cents per hundred pounds of shipment." Such was the legal effect of said telegrams, and it became the duty of the court to so instruct the jury. The meaning of the contract as to the controverted issues in the case was properly submitted to the jury in the general charge, and is not complained of. Whether the cotton moved at the basis rate of 92 cents, or under a subsequent arrangement, both contracts were in writing, and their meaning as to rate undisputed.

The answer to the fifth assignment is that it appears beyond controversy, we think, that this suit was filed on the 14th day of May, 1908, and not on April 22, 1909. The statement of the court in his charge that it was filed on the latter date was a clerical error, or is not supported by the record.

By a cross-assignment of error, the appellee complains of the trial court's refusal to instruct the jury, at its request, in substance, that if the plaintiff presented the claim sued on to defendant, and defendant requested further time, in which to investigate said claim, and at the same time promised and agreed that if such time was granted defendant would not interpose the statute of limitation as a defense to any suit plaintiff might institute on account of said claim, and that by such promise and agreement plaintiff was induced to grant such time and delay the institution of such suit, then the time so granted should not be considered in passing on the question of limitation. Having held that appellee's claim, without reference to the agreement here mentioned, was not barred by the statute of limitation, and that the judgment of the lower court should be affirmed, it becomes unnecessary to pass on this assignment.

Our conclusion is that the verdict is sustained by the evidence, that none of the assignments point out reversible error, and that therefore the judgment should be affirmed. It is accordingly so ordered.

Affirmed.