PENN v. BRISCOE COUNTY et al.

(Court of Civil Appeals of Texas. Amarillo.
Dec. 20, 1913. Rehearing Denied
Jan. 17, 1914.)

1. APPEAL AND ERROR (§ 171*)—THEORY IN
LOWER COURT—ESTABLISHMENT OF BOUND-
ARY.

Where all the parties to an action to establish the boundary of plaintiff's land with reference to a public road and the court treated a particular corner as the beginning corner of the survey, a judgment based on that theory will be affirmed in the absence of error of law.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1063, 1066, 1067, 1161–1165; Dec. Dig. § 171.*]

2. TRESPASS TO TRY TITLE (§ 46*)—SPECIAL
VERDICT—CONSTRUCTION.

In trespass to try title involving the location of plaintiff's land with reference to a county road, the first special issue submitted stated that the jury should find in the verdict that plaintiff's patent correctly described the south line of his land, unless it found that said line is elsewhere than claimed by plaintiff, in which event the jury should say by its verdict that

it found that it was different, and how much, if any, north or south, and, if the jury found that the line was as Surveyor Jones ran it, then it should place it at the south fence of plaintiff, and a third issue stated that if the jury found that the county recognized the road as claimed by plaintiff, and that the south line of his fence was recognized as the north line of the road, and plaintiff acted and relied on that as being the public road when he purchased, then that would be deemed in law the road, regardless of where the true section line was or the road was actually laid out, and the county would be estopped from denying the location of the road. The only answer of the jury was: "We, the jury, find for the defendant on the first issue as to location of the Jones survey, and also that plaintiff shall move his fence 30 feet north of said survey." Held, that the finding was one for defendant to the effect that the beginning corner could not be located from the Jones survey, and was also a finding against plaintiff on the issue of estoppel.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 68; Dec. Dig. § 46.*]

3. APPEAL AND ERROR (§ 930*) — PRESUMP-
TIONS.

It must be presumed that the jury read special issues submitted to them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. § 930.*]

4. TRIAL (§ 355*)—SPECIAL FINDINGS—CON-
STRUCTION.

The form of answers to special issues is immaterial if the jury's meaning is clear, and the answer may be construed to include matters resulting by necessary implication from facts expressly found.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 846–848; Dec. Dig. § 355.*]

5. APPEAL AND ERROR (§ 843*) — REVIEW —
QUESTIONS CONSIDERED.

Whether plaintiff in trespass to try title can recover by showing estoppel where an affirmative answer is interposed, which is also an ordinary action to try title, need not be considered on appeal, where the jury found that there was no estoppel.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3341; Dec. Dig. § 843.*]

Appeal from District Court, Briscoe County; L. S. Kinder, Judge.

Action by J. W. Penn against Briscoe County and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Dalton & Russell, of Plainview, for appellant. K. Ewing Bain, of Silverton, for appellees.

HENDRICKS, J. The town of Silverton, the county seat of Briscoe county, Tex., is situated on section No. 20, block A, Arnold & Barrett survey. Section No. 96, block B–1, Beatty, Seale & Forwood survey is situated directly east and adjoining survey No. 20. In June, 1892, by virtue of an order of condemnation of the commissioner's court of Briscoe county, a jury of view, assisted by one Waller, the county surveyor of that county at that time, laid out and surveyed a county road of the first class, beginning at Silverton and terminating at the east boundary line of said Briscoe county. One J. W.

Penn, in 1899 purchased the southwest quarter of section 96, which at that time was unpatented school land and finally patented by him in the year 1907. The field notes of the survey of the county road recite a beginning at the southeast corner of the public square in said Silverton; thence east with the center of Commerce street to the center of Park street; thence south with the center of Park street to the south line of section No. 20 (upon which said Silverton is situated); thence east 525 varas to the southeast corner of said section No. 20; and from there surveyed south, calling for different mounds at specific distances in the same direction, except as indicated by calls from short distances in an easterly direction and in the line of the survey, calling for a well-known corner designated as "the monument" several miles from Silverton, and which "monument" is the southeast corner of section No. 1, Beatty, Seale & Forwood survey, Block B–1, the same block in which is situated section 96, the southwest quarter of which is owned by the plaintiff immediately adjoining the town section 20. J. W. Penn sued the county in the ordinary form of trespass to try title, also J. W. Burson, who it is not necessary to further mention with reference to this litigation; the county answering by plea of not guilty and further answering in the ordinary form of trespass to try title, and praying affirmatively for a judgment for the title and possession of the land described in plaintiff's petition and for writ of restitution.

The trial court, after a general charge explanatory of the issues in the case, submitted the case on special issues as follows:

"First issue. As to location, you are charged that you will find and so say by your verdict that plaintiff's patent correctly describes the south line of the S. W. ¼ of 96, unless you find and believe from the evidence that said line is elsewhere than claimed by the plaintiff, in which event you will say by your verdict that you find that it is different, and how much, if any, north or south. If you find it is (as) Surveyor Jones ran it, then place it at the south fence of plaintiff.

Second issue. You will find and so say by your verdict that the present location of the road is as it was originally run out by the surveyor N. G. Waller and the jury of view, unless you find and believe from the evidence that it was originally run out from the S. E. corner of town block 147; then if you do then place center of the road 45 feet north of plaintiff's south line, marked by center of present road, and make it 60 feet wide.

Third issue. If you find and believe from the evidence that Briscoe county, through its authorities, recognized the road as claimed by the plaintiff, and that the south line of his fence was recognized as the north line of the road, and that plaintiff acted and relied on that as being the public road when he purchased the ¼ section and improved and patented it, that this has been done all along, then that will be deemed in law the road, regardless of where the true line of the section is and regardless of where the road was actually laid out, and the county will be estopped to deny the road as it now is, and you will find for the plaintiff on this issue and so say by your verdict; otherwise you will find for the county on this issue."

The jury, in answer to the issues submitted by the trial court, returned the following verdict: "We, the jury, find for the defendant on the first issue as to location of the Jones survey, and also that plaintiff shall move his fence 30 feet north of said survey." The appellant in this court (the plaintiff in the trial court) insists by his first assignment of error that this verdict is not responsive and meaningless as to the real points at issue; that there is really no verdict in the cause which settles this case for that the second and third issues are not answered and the question is still open as to where the road was actually run on the ground and the starting point for the same. This assignment, or at least the greater part of it, is quite involved and argumentative, intermixed with conclusions, although the propositions—at least the first, third, and fourth thereunder—segregate and rather specifically point out the error which is attempted to be specified and complained of in this court. The statement of facts in this case is rather inadequate and unsatisfactory and difficult to determine from it the rights of the parties in litigation. The field notes of the public road, as stated, begin at the southeast corner of the public square in Silverton; thence east with the center of Commerce street to the center of Park street; thence south with the center of Park street to the south line of section No. 20 (the section upon which the town was situated); thence east 525 varas to the southeast corner of said section No. 20. Ordinarily the beginning recited cases of the field notes for objects of this character in a survey would become very important where course and distance from another object is attempted to be invoked as contravailing with reference to the original location, as much so as the well-recognized "monument" in the line of this survey. In this case, however, both sides seem to have joined upon the issue that the southeast corner of section No. 20, as it existed in June, 1892, at the time the jury of view, accompanied by the surveyor, laid out the road, was the real beginning corner of the survey of this road, and no stress is made whatever to the southeast corner of the public square, the center of Commerce street, and the center of Park street, as natural objects upon the ground, with reference to the location of the road survey, or the relocation now, as it existed then, when the road was condemned. The appellant, plaintiff in the trial court, has briefed the case upon the theory that the beginning field notes of the

road survey have nothing to do with the original location of this survey. The charge of the court seems to exclude those matters from consideration in submitting the case to the jury, and the testimony of one Gregg, one of the viewers of the jury of view, is to the effect that the distances from the southeast corner of the public square in Silverton to the southeast corner of survey No. 20 were not measured, nor was any line surveyed by the surveyor who assisted the jury of view in laying out the road; that the county surveyor, whom the jury of view entirely relied upon, took them to a "stob" or "stake" as the S. E. corner of survey 20, and instructed them to begin running the road from that point; and as this was the only actual point on the ground where the survey began, we shall also treat this case the same as the trial court and appellant and appellee; that is, the crucial question being the southeast corner of this survey No. 20, as the beginning corner of the road. The county contends that on account of the uncertainty of this corner upon the ground and the difficult discovery of same by any physical evidence at this time, as the start of the footsteps of the surveyor, that a survey by course and distance from the well-known "monument" in the line of the survey is the only way at this time to ascertain the beginning corner of said road survey, and which was done by the present county surveyor of the county by a carefully checked and verified survey. We have carefully considered this evidence, and have concluded that the county's contention with reference to this proposition is correct. It is true that in March or April, 1892, prior to the road survey in June of the same year, there was a survey beginning at some point east on the block lines between A and B–1, in connection with what was then known as the old "F fence," and a corner was then established as the southeast corner of survey No. 20, and known in this record as the "cogwheel" corner, and with reference to which corner there is harmony and connection by extension of lines with the survey of Penn's quarter in section 96; but the trouble is that we are unable to ascertain from this record that there is any connection whatever between this cogwheel corner and the corner of survey No. 20, which Waller and the jury of view assumed, whether correct or incorrect, in June, 1892, in surveying the road. All evidences of where Waller and the jury of view began are gone, or at least, are not testified to in the record.

[1] Gregg, one of the jury of view, simply says that Waller began them at a "stake," but where that stake was situated then with reference to any object or call or bearing point which can be ascertained now is entirely indefinite and the record silent; and all parties, including the court, treating that particular corner as the real beginning corner of the survey, unless some error of law was committed by the court, this judgment should be affirmed. Penn contends that the road survey in 1892 would permit him to leave his fence where it now stands if confined to the cogwheel corner, with which the survey of his land, made in 1907, when patented, is in harmony; or at least should not cut as much from his land as the Jones resurvey, by course and distance from "the monument," will take, if the road is adjusted to that work; and, in the alternative, if the Jones survey, now made by course and distance from "the monument" is correct as establishing the old road survey, the county is estopped to claim it on account of user. If the trial jury sufficiently answered the special questions, we are bound by their verdict. While the subject is not free from difficulty, we are inclined to think that a reasonable construction of the verdict concludes the question.

[2] In short, the jury evidently found against the plaintiff and for the defendant, and that the Jones survey, under the evidence, was the only survey and the only method by which, on account of the uncertainty of the beginning corner of survey No. 20, that corner could not be found; and on the issue of estoppel submitted by the court in the third issue, that part of the jury's verdict which is to the effect that plaintiff should move his fence 30 feet north of the Jones survey may reasonably be construed as an answer to the submission of that issue. In reality, upon a thorough consideration of the record, we find that the finding by the jury that the Jones survey, made by course and distance from the only known point in the line of survey, is an ascertainment of the original survey, and, this having been found, a further finding that plaintiff's fence should be moved 30 feet north of the same is, in reality, a complete finding as to any material issues which could and should have been submitted.

[3] It is true that, in a sense, when you consider punctuation, and a lack of reference in the verdict to the issues submitted as 2d and 3d, it may be said that those issues were not specifically answered, but when you read the evidence upon the contentions of the two parties litigant, upon the presumption that the jury read the issues submitted, the findings by it, although not specifically expressed as a direct answer, the implication is such as that it is a necessary deduction that the jury intended to answer the material issues submitted.

[4] The case of Moore v. Moore, by the Supreme Court, 67 Tex. 297, 3 S. W. 285, cited by the appellant, for the purpose of sustaining its contention in this matter, enunciates this principle: "It may be conceded that it matters not how a finding is expressed, so that the meaning of the jury is clearly tangible; and it may be that what is not expressed may be implied, provided the im-

plication be a necessary deduction from that which is directly stated." The court, in submitting the third issue, in rather a clear and succinct presentation of estoppel, directed the jury that if they found certain elements the county will be confined to a certain road, (the present traveled road) regardless of where the road was actually laid out, and would be estopped to deny the road as traveled at the present time, and that if they find those elements to find for the plaintiff against the county. When the jury found for the defendant, and in favor of the Jones survey, and said that the plaintiff shall move his fence 30 feet north of the Jones survey, which latter survey the evidence shows was approximately close to the fence of the plaintiff, it seems to us that the implication is a necessary deduction that the jury did not believe that the county was estopped, and was a finding upon that point.

[5] The question whether a plaintiff in the ordinary form of trespass to try title can prove and maintain estoppel, where an affirmative answer is also merely trespass to try title by defendant added to not guilty, is undecided; upon our consideration of this case, if the jury found against estoppel, it becomes an academic question, and our conclusion is that, upon the whole record, the judgment of the trial court should be affirmed, and it is so ordered.