## KING et al. v. CHICAGO, R. I. & G. RY. CO. (No. 9743.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 18, 1922. On Motion for Rehearing, April 8, 1922.)

1. **Carriers** ⬤⇒30—**General provision in tariff yields to exception in subsequent item controlling particular facts.**

A general provision in an item of a freight tariff established by the Interstate Commerce Commission, giving the carrier the right to transport cotton to any other compress, if the one designated is unavailable, without additional charge to the shipper, must yield to an inconsistent provision in the subsequent item, referring to shipments on designated routes in cases coming within the latter item.

2. **Evidence** ⬤⇒22(3)—**Court can take judicial notice of general direction of railroad.**

The trial court could judicially notice the fact that defendant railroad company ran in a northerly direction from Bowie, Tex., through the state of Oklahoma.

On Motion for Rehearing.

3. **Appeal and error** ⬤⇒176—**Plaintiffs are not bound by general assumption of fact defendant must prove.**

Plaintiffs are not bound by the general assumption at the trial by the trial court and the parties of a fact which it was incumbent on defendants to prove in order to bring the case within the exception to the general rule authorizing recovery by plaintiff.

4. **Evidence** ⬤⇒10(2)—**Court cannot take judicial notice of location of town in another state.**

The court cannot take judicial notice of the location of a town in another state.

Appeal from District Court, Montague County; C. R. Pearman, Judge.

Action by S. W. King and others against the Chicago, Rock Island & Gulf Railway Company. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Benson & Benson, of Bowie, for appellants. Lassiter & Harrison, of Fort Worth, and Donald & Donald, of Bowie, for appellee.

DUNKLIN, J. The King-Collie Company, cotton dealers, sued the Chicago Rock Island & Gulf Railway Company to recover rebates in freight paid to that company on a great number of cotton shipments made during the year 1917; and they have appealed from a judgment denying them the recovery sought.

The shipments originated at different places in the state of Oklahoma, from which places the railway company carried the cotton to the town of Bowie where it was compressed before being shipped to its destination. The cotton was all destined for northern and eastern markets, to which markets it went after being compressed at Bowie.

The following are freight tariff regulations established by the interstate commerce commission:

"Item No. 175.

"Freight Tariff C. R. I. & G. No. 25659—E: "I.CC No. 10060: CRI&G—GFD No. 1356—1 ......

"The object and purposes of these rules is to permit the movement of cotton in bales to transit points for market privileges, compression and reshipment under the conditions of these rules. If, however, high water, accidents, breakdowns, damage, destruction by fire, receipts beyond capacity or other cause, render any compress unavailable for prompt service or inaccessible to carrier, such carrier reserves the right to use any other available compress without additional charge to the shipper.

"Item No. 176.

"Under circumstances outlined in item No. 175, permission may be given to concentrate cotton at compress points on the CRI&G Ry. When originating at stations Huntly to Hastings, Oklahoma (index Nos. 32 to 46 inclusive) and Ninekah to Addington, Okl. (index Nos. 84 to 91 inclusive) the following rate in cents per 100 pounds will be assessed into the concentrating points: Bowie, Texas, 40 cents; Forth Worth, Texas, 50 cents. When originating at Stations Sugden, Ryan or Terral, Oklahoma (index Nos. 92, 93, and 94), the following rates in cents per 100 pounds will be assessed into concentrating points: Bowie, Texas, 30 cents; Fort Worth, Texas, 40 cents.

"Note.—In the event any cotton is concentrated at points on the CRI&G Ry. under the foregoing arrangement, the expense bills will not be available for application against outbound shipments via Terral, Oklahoma."

The evidence showed without controversy that there were other cotton compresses in the state of Oklahoma nearer to the places of origin than the Bowie compress, but none of those compresses was available for prompt service on account of the fact that they were congested with other cotton which had accumulated in great quantities before the

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

plaintiffs made their shipments. On account of those conditions, the defendant company, after receiving plaintiffs' cotton, shipped it to Bowie for compression, and its action in so doing was acquiesced in by the plaintiffs in recognition of the fact that the other compresses mentioned were not then available. The recovery sought was for the excess freight rates which plaintiffs were compelled to pay in order to get the cotton to the compress at Bowie, over and above what it would have cost them if the cotton had been carried to other compresses nearest to the places of origin of the different shipments.

[1] Plaintiffs relied upon the provisions of item No. 175 of the freight tariff, copied above, which by its terms, in effect, insures to a shipper protection against such excess charges when cotton is diverted from the nearest compress to some other compress under conditions therein stated. Item No. 175 prescribes a general rule or regulation applicable to all shipments of cotton. But the note forming a part of item No. 176 clearly is an exception to the general rule stated in item No. 175, and shipments coming within that exception will be governed by its terms to the exclusion of the operation of the general rule stated in item No. 175. The defendant in its pleadings invoked this exception as controlling.

Appellants insist that the proof was insufficient to warrant the implied finding by the trial court that the cotton after leaving the town of Bowie, Tex., where it was compressed, was shipped via Terral, Okl., and therefore came within the provisions of the note to item No. 176. The contention is overruled.

[2] While no one testified definitely and specifically that the outbound shipments of plaintiffs' cotton did go via Terral, Okl., yet the proof shows conclusively that all of plaintiffs' cotton was shipped north under their direction; that the defendant company made the outbound shipment and no question was raised that such shipments did not go through Terral, Okl. In other words the whole trial appears to have been upon the general understanding on the part of counsel and the court that the shipments did go through Terral, Okl., and no question was raised to the contrary until the defendant filed a motion for a new trial. Penn v. Briscoe Co. (Tex. Civ. App.) 162 S. W. 916; 3 Corpus Juris, p. 735, par. 629, and page 838, par. 745. The trial court was authorized to take judicial cognizance of the fact that the defendant railroad company runs in a northerly direction from Bowie, through the state of Oklahoma. And according to many respectable authorities the trial court could also take judicial cognizance of the fact that the town of Terral, Okl., is on defendant's railway, near the border of the states of Oklahoma and Texas. 16 Cyc. p. 861, and authorities there noted.

The proof further shows without controversy that the demands made upon the defendant company by the plaintiffs for the payment of the rebate claims were all rejected because of the provisions of the note to item No. 176, and it does not appear that plaintiffs during those negotiations, looking to the collection of their claims made any contention that the north-bound shipments from the town of Bowie did not go through Terral, Okl.

Plaintiffs further alleged in their petition a contract made with defendant's agents prior to the shipments that the defendant company would refund to them the excess charges sued for; and appellants by another assignment of error insist that those allegations were sustained by uncontroverted proof and therefore judgment should have been rendered in their favor on the contract, irrespective of the issue discussed above. A sufficient answer to this assignment is the rule well established that the interstate traffic regulations control in such matters and that any contract made by a railroad company in violation of those regulations is void and of no effect. H. & T. C. Ry. Co. v. Dumas (Tex. Civ. App.) 43 S. W. 609; G., H. & S. A. Ry. Co. v. Wood-Hagenbarth Cattle Co., 105 Tex. 178, 146 S. W. 538. The case of St. L., S. F. & T. Ry. Co. v. Birge-Forbes Co. (Tex. Civ. App.) 139 S. W. 3, relied upon by appellants, is not applicable, since that related to a shipment to a foreign country and was therefore not in violation of the Interstate Commerce Commission regulations.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

[3] On original hearing we said that the trial in the court below appeared to have been upon the general understanding of counsel for all parties that the shipments in controversy went north via Terral, Okl., and that no question was raised to the contrary until plaintiffs filed a motion for a new trial. Upon further consideration, we have reached the conclusion that plaintiffs should not be held bound by such apparent understanding, since the burden was upon the defendant to show that the shipments were controlled by note contained in item No. 176 of the tariff regulations set out in our original opinion, and which provision was an exception to the general tariff regulations contained in item No. 175. Plaintiffs were not required to introduce any evidence to overcome the defense based upon the exception relied on and pleaded by the defendant, until proof was first made by the defendant which amounted to a showing prima facie that the shipments came within the operation of the exception pleaded.

[4] We are of the opinion further that we were in error in holding, in effect, that the

trial court was authorized to take judicial cognizance of the fact that the town of Terral, Okl., was on defendant's railway, near the border of the states of Oklahoma and Texas. As pointed out in our opinion, many authorities in other jurisdictions support that conclusion; but in their motion for rehearing appellants have cited authorities in this state which are of a contrary effect. In Yale v. Ward, 30 Tex. 18, our Supreme Court said:

"This court has held that it will not take judicial notice of the division of other states into towns, cities, etc., and that knowledge of the fact that any place is within a different state of the Union must be derived from the allegations of the parties or the evidence contained in the record. Andrews v. Hoxie, 5 Tex. 185; 4 Tex. 120."

In that case it was held that the court could not take judicial knowledge of the fact that the city of New Orleans was in the state of Louisiana. We have found no decision in this state overruling those decisions; nor has the appellee filed any reply to appellants' motion for rehearing to show that the rule of the decisions in this state is now contrary to the announcement made in those decisions.

Accordingly, the former judgment of this court affirming the judgment of the trial court is set aside, and appellants' assignment of error presenting the contention that the evidence was insufficient to sustain the defense referred to above is sustained, and the judgment of the trial court is reversed, and the cause is remanded for another trial.